# PHILIP RAINEY *et al.*

## *v.*

# RICHARD A. NANCE *et al.*

54   29
67a  244

54    29
73a  276
74a  584

54    29
175  210

54     29
113a  5655

1. PARTNERSHIP—*of the application of firm assets and of the separate property of the individual partners, to the payment of debts.* As to the order in which partnership debts, and the individual debts of the partners shall be paid, the rule is, that no one partner has a right or share in the firm property, except the portion which remains after full payment of all the partnership liabilities; and each partner has a right to have the same applied to the payment of all such liabilities before any one of the partners, or his personal representatives, or his creditors, can claim any right to the same.

2. And as between the partners themselves, there is a lien upon the partnership assets, as the primary fund for the payment of partnership debts, or at least an equity, which may be enforced through the partners, in favor of creditors of the firm, although it may not directly attach in the creditors, by virtue of their original claims, in all cases.

3. Though it is only in cases where there is a dissolution by death, or bankruptcy of one partner, that the right of the joint creditors can attach as a *quasi* lien upon the partnership effects, as a derivative, subordinate right, under and through the lien and equities of the partners.

4. In equity, in case of insolvency or death of a partner, thus terminating the partnership, the joint creditors are entitled to a priority of payment out of the joint fund, and the separate creditors to a like priority out of the separate property of the partners, unless specific liens have been acquired on the respective classes of property. But in case of a surplus in either fund, not subject to any specific lien, creditors of the other class may participate in such surplus.

5. One partner can not, as against his copartners, give to his individual creditor, by mortgage, pledge, or otherwise, a specific lien upon his interest in the firm property, to the exclusion of creditors of the firm who have not acquired such a lien.

6. Nor can a judgment creditor of one partner, by a levy upon the debtor's interest in the firm property, acquire a lien superior to the rights of the other partners, or of the partnership creditors. Such a levy would only operate to give a lien prior to that of other separate creditors of the individual partners upon their respective portions of the fund remaining after the payment of firm debts, and satisfying the claims of other partners.

7.  Where a person becomes a member of a firm, purchasing an interest in a mill and the ground upon which it stands, and there is a prior incumbrance by mortgage upon the premises, which the former owners agreed to remove, and also a mechanic's lien of which the purchasing partner had no notice, the real estate becomes partnership property, and upon an adjustment of the rights of the partners, and partnership creditors, and creditors of individual partners, the purchasing partner, as against the separate creditors of the partners, will be considered a creditor of the firm, and as such, entitled to be reimbursed out of the joint fund, to the exclusion of such separate creditors, to the extent of those prior liens which had been satisfied on a sale of the firm property.

8.  LEVY UPON LAND *in a foreign county—duration of the lien.* Where an execution is issued to a foreign county, and there levied upon land, and a certificate of the levy duly filed, the lien of the levy will continue for the period of seven years from the time when the judgment became a lien in the county in which it was rendered.*

APPEAL from the Circuit Court of Menard county; the Hon. CHARLES TURNER, Judge, presiding.

The opinion of the Court contains a statement of the case.

Mr. ISAAC L. MORRISON, for the appellants.

Messrs. LACEY & WALLACE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the record in this case, that Richard A. and Z. Nance were the owners in fee of lots three and four, in block seventeen, in the town of Petersburg, Menard county, in this State, about the twentieth of August, 1867, and were then engaged in erecting on the same a steam flouring mill. On that day, they entered into an agreement with Philip Rainey, binding themselves, in consideration of $5,666.66, to be paid by Rainey, to complete the mill and put it in running order, with all necessary machinery, and to convey to Rainey

*See, also, *Ewing et al.* v. *Ainsworth,* 53 Ill. 464.

one undivided third part of the lots and mill, free from incumbrance, and an undivided third interest in certain enumerated personal property, and a third of the business, on or before the fifteenth day of October, 1867; that the Nances completed the mill and executed to Rainey a deed for the third of the property, with covenants of warranty, and the parties then formed a partnership, under the name of Nance, Bro. & Co., and commenced the milling business; that the business had continued until the bill was filed. Rainey paid the purchase money, which was used by the Nances in their separate business, and not in that of the firm.

The bill alleges that the Nances, on the 27th of July, 1867, with their wives, executed a mortgage to William Meyer, on the property, to secure the sum of $1500, due in nine months, with ten per cent interest; that before Rainey purchased, the Nances agreed to have this mortgage discharged, and to give a new one on their interest in the property; that there were secret mechanics' liens on the property, unknown to Rainey when he purchased and received his deed; that the mechanics filed a bill against the Nances, Rainey and Meyer, to enforce their lien, for the sum of $3858.84, obtained a decree for that sum, and directing the sale of the premises, without noticing or in any wise protecting Rainey's interest under his purchase.

That, after the partnership of Nance, Bro. & Co. was formed, the firm borrowed $3540.53, on December 21, 1867, of Brahm & Green, and on the twelfth of February, 1868, the further sum of $2307.28, for which they gave their notes, drawing ten per cent, and on the twenty-third of March, following, executed a mortgage on the mill property to secure the same; that, on the second of July, 1868, the sheriff of Menard county, by virtue of an execution in favor of W. H. Cushman, and against the Nances, levied upon all of their interest in the mill property, and filed a certificate thereof in the recorder's office; he also levied the execution upon a quantity of personal property belonging to the firm.

That the Nances executed a mortgage on their interest in the property, to secure John Bennett, Robert T. McNeeley and John Tice against loss, by reason of their having become securities for the Nances for the payment of $2500, to Shipley. This mortgage was dated on the third of July, 1868; that Shipley recovered a judgment on the note thus given, and execution was in the hands of the Sheriff for the collection of the same; that the firm of Nance, Bro. & Co. were indebted to various persons in the sum of $9500; that the debt to the mechanics and the debt to Meyer were specific liens on the property; that Rainey had a lien on the property to reimburse his loss by reason of the incumbrance of the mechanics' lien; that the property is insufficient to pay the firm debts and refund Rainey the capital he put into the firm, and that there was no interest of the Nances in the firm property liable to their separate individual debts, of which they owed large amounts, aside from the firm indebtedness, and they were insolvent; that the Nances are indebted to the firm for funds drawn out by them. The bill prayed an injunction to restrain sale of property, and that the partnership property be applied to pay firm indebtedness; for a dissolution of partnership, and, if anything remains from a sale of the mill on the decree in favor of Crosier, Baxter & Co., to enforce their mechanics' lien, after paying the same, that it be applied to refund the money advanced by Rainey to become a partner, subject to the payment of the firm debt to Brahm & Green.

On the first day of April, 1869, Brahm & Green filed a cross-bill, against Rainey and the several defendants to the original bill. They set up their mortgage and notes, and pray a foreclosure out of funds in court, and appropriation out of firm assets to payment of firm debts. On the fifth of April, in the same year, Bennett, McNeeley, Tice and Shipley filed a cross-bill, setting up and relying upon their mortgage, and praying for its foreclosure. There were answers to the original and cross-bills, but they do not controvert the material allegations of the original bill. Replications were filed to the various answers in the case.

The court, by interlocutory order, appointed a receiver, who took charge of the partnership property, and reported his acts to the court, and the amount of firm assets which he had received, and the debts due the firm which could, as well as those that could not, be collected; by which it appeared there was a considerable sum over and above the price received on the sale of the mill, and that other debts owing, to a considerable amount, beyond those named in the bill, existed against the firm.

On a hearing on the original and cross-bills, answers thereto, replications, pro confesso orders and proofs, the court rendered a decree, by which it is found that the mill, and lot four on which it is situated, had been sold under a decree in favor of Crosier, Baxter & Co., to enforce their mechanics' lien, for the sum of $3858.84, and that the property had been sold for $12,200, and after paying their decree there remained in the hands of the master the sum of $7800.90, after deducting $1752.87, paid to William Meyer, under an order of court.

The decree proceeds to distribute the fund: first, to Brahm & Green, $6882.34, out of that fund, and $1060.44 out of the general assets of the firm, after paying the specific liens of Bennett, Tice, McNeeley and Shipley; second, that of the proceeds of the sale of lots three and four, and after Brahm & Green shall be paid, William H. Cushman shall be paid the two-thirds belonging to the Nances; third, that Bennett, McNeeley, Tice and Shipley, as to $2213.65, the proceeds of the sale of flour and grain levied on by execution in their favor to the extent of the interest of the Nances therein, being $1475.75, be paid from that fund, they to receive the balance of their claim out of the interest of the Nances in the fund remaining after the claims of Brahm & Green and Cushman shall be paid; fourth, the general creditors of Nance, Bro. & Co. to be paid as follows: After deducting from the proceeds of the sale of the goods levied by Shipley the sum of $1475.75, out of the proceeds of the balance of the partnership assets, including the third interest of Rainey in the funds arising from the sale

of the lots, after paying Brahm & Green's mortgage, and also any of the other two-thirds, after payment of Brahm & Green, Cushman, Bennett, etc., until they are paid in full. Fifth, that Rainey was entitled to receive one-third of any balance of the firm assets of Nance, Bro. & Co. after the payment of all the partnership debts of the firm, and the specific liens above described, and also one-third of the real estate fund, after payment, as above ordered. Sixth, that the costs and expenses of the suit be first paid out of the general fund. It also orders the sale of lot three, for money, and report the same to the court. To reverse this decree, Rainey and Brahm & Green prosecute this appeal, and bring the record to this court, and assign various errors.

In case of a dissolution of a co-partnership by death, or by the insolvency of any portion of the members of the firm, questions are presented as to the manner in which the assets of the firm shall be appropriated to the payment of the debts. As to the order in which debts against the firm, and those against the individual members of the firm, shall be paid, it is the settled rule, that no one partner has a right or share in the firm property, except the portion which remains after full payment of all debts and liabilities of the partnership; and it thence follows that each partner has a right to have the same applied to the due discharge and payment of all such debts and liabilities, before any one of the partners or his personal representatives, or his individual creditors, can claim any right to the same. Story on Part. sec. 97 ; Coly. on Part. Book 2, chap. 1, p. 64. It is also said that, as between the partners themselves, the debts and liabilities of the firm to creditors and third persons, they are a fund appropriated in the first instance to the discharge and payment of such debts and liabilities, and there is, properly speaking, as between them, a lien thereon, or at least an equity, which may be enforced through the partners, in favor of creditors, although it may not directly attach in the creditors, by virtue of their original claims, in all cases. Story on Part. ib. and sec. 360.

It is again said, by the same author, it is only in cases where there is a dissolution by death, or bankruptcy of one partner, that the right of the joint creditors can attach as a *quasi* lien upon the partnership effects, as a derivative, subordinate right, under and through the lien and equities of the partners. In case of death, the personal representatives of the deceased partner have a right, whether the estate be solvent or insolvent, to insist upon a due application of the joint effects to pay the joint debts, and fulfill the other purposes of the trust. At law, the creditors have no remedy, except against the surviving partners, for their debts, but it is otherwise in equity. Ibid. sec. 361. In equity, the joint creditors are entitled to a priority of payment out of the joint effects, and the separate creditors to a like priority out of the separate effects, before the other classes of creditors shall be entitled to any portion of the surplus. Ibid. sec. 363.

It thus appears that, in equity, in cases of insolvency or death of a partner, thus terminating the partnership, the joint creditors must look to the joint fund, and the separate creditors to the separate property, for the payment of their claims. But, in case of a surplus in either fund, the creditors of the other class may participate in such surplus. Where the separate property of either partner proves insufficient for the payment of his individual debts, and there is a surplus of the joint property after payment of the firm debts, such separate creditors may resort to the share of the partner thus indebted to them, in such surplus. In this case, then, the firm property must be applied in the discharge of the firm indebtedness, before it can be applied to pay the debts of the individual members of the firm, and the separate property of each member of the firm must be left as primarily liable to the payment of his individual debts, unless specific liens may have been acquired on each class of property.

It then follows, that the decree of Baxter, Crosier & Wempel, for their mechanics' lien, was properly first paid out of the joint fund, as it was a joint debt, and became a prior specific lien on the firm property.

The court below finds that the Nances executed a mortgage on the mill property, and the same was recorded before Rainey purchased a third of the same. It, therefore, became a second specific lien on that property, and if not satisfied, it was entitled to payment next in order to the mechanics' lien. And as the mortgage to Brahm & Green was the next specific lien in the order, it is entitled to be next paid out of that fund, so far as the money is adequate to that purpose, and that the balance of their mortgage debt should be a prior lien on the unsold lot. Of this, there can scarcely be a doubt. The mortgage was given by the firm, on property held by the members for firm purposes, and only used or designed for the use of the business of the firm, and must be regarded as firm property, and primarily liable to the debts of the firm. As to their debts, however, not secured by mortgage, they are on the same footing as other creditors of the firm having no specific liens, and must share with them in the general fund in its payment.

We now come to consider the question, whether a separate creditor of one member of the firm may acquire a specific lien on the interest of such partner in the firm property, to the exclusion of firm creditors, who have not acquired such a lien. It is a familiar rule of law, that one partner can not appropriate the property or funds of the firm for the payment of his individual debt. It is held to be a fraud upon the other partners, and if the vendee or creditor can be held chargeable with notice, the sale or payment will be held void. And it is for the reason that the other partners have a superior lien on the partnership funds, and may insist that they shall be applied to the payment of the partnership indebtedness, and other firm purposes. The Nances could not, therefore, have sold the firm property to pay their individual debts.

The law now seems to be well settled, that an execution may be levied upon the interest of a partner in the firm property, and it may be sold for the payment of the judgment. But the purchaser only acquires the interest of the debtor, subject to the settlement of the debts and liabilities of the firm. He can

only hold such interest as the partner has on a final settlement and account of the affairs of the firm, and the rights of the partners on such accounting.

It is also a rule, that the representatives of a deceased partner only take the interest that the deceased had in the firm on a final settlement of its affairs.   In all these cases, equity holds the lien of the other partners to have the joint property applied to the payment of the firm indebtedness superior to that of the vendee, the purchaser under the execution, or the title which the law casts upon the legal representatives.   If, then, the law will not permit a partner, as against his co-partners, to apply the firm property to his individual indebtedness, or a legal sale, or the title by administration, to divest them of title, we are at a loss to understand how such a partner may produce such a result by mortgage, pledge, or otherwise.   To so hold, would be to permit that to be done indirectly, which the law has prohibited from being done directly.   This doctrine fully accords with the rule announced by Story on Part. secs. 132 and 263, and the authorities there cited.

It follows, that Cushman, by the levy of his execution, did not, as against Rainey, acquire a superior lien, or the right to have the interest of the Nances in the firm property applied to the payment of their individual debt to him.   He only, by the levy, acquired a prior lien to their other separate creditors to their share of the fund that should remain after all the firm debts should be paid, and Rainey should receive his share of the surplus.   All the creditors of the firm hold, through Rainey, a superior equity to him, or any other of their separate creditors, to have their debts paid out of the remainder of firm assets, after paying the specific liens first, either in whole or *pro rata.*   The same is true of the levy under the execution in favor of Shipley, on the interest of the Nances in the firm property, which is a junior lien to the levy of Cushman's execution.

It is, however, contended that Cushman's levy ceased to be a lien, because a sale was delayed some months after the certificate of levy was filed with the recorder.   We see no grounds

for so holding.  The statute has declared that the filing of the certificate of levy, under an execution from a foreign county, with the recorder, shall create a lien on real estate.  The law is silent as to the duration of such a lien, but it is only reasonable to suppose that such lien was intended to have the same, and no greater, effect than the lien of the judgment, had it extended to and embraced the land thus levied upon under the execution.  It is but reasonable to hold that such a lien would continue for the period of seven years from the time when the judgment became a lien, and no longer.  *Tenney* v. *Hemenway,* 53 Ill. 97.  Cushman's levy, then, became a lien on the interest of the Nances after the payment of the firm debts, and, so far as we can see, it still remains.  And Shipley's levy on their interest in the personalty became a lien, subject to the payment of the firm debts and what should remain to them on a final accounting with Rainey, with the same limitations to which Cushman's is subject.

After these liens are satisfied out of the portion the Nances are entitled to receive on a final accounting with Rainey, if any portion of their share of the assets of the firm shall remain, then their other separate creditors might participate in whole or *pro rata.*

A question has been raised, whether Rainey is entitled to be reimbursed for the interest he had in the mill property, which was appropriated to the payment of the mechanics' lien and Meyer's mortgage, which was an incumbrance on the mill property when he became a partner.  We have seen that, although real estate, it became firm property; and Rainey, having paid one-third of the value of the property, became the owner of one-third of the same, and held it, whether it was free from incumbrance, or the surplus over and above the incumbrances existing when he received his deed.  In equity, he held a third interest in the property, as against the Nances and their creditors, subject, however, to the payment of all subsequent firm debts.  Had a dissolution taken place, and there had been no debts, on the statement of an account,

Rainey would have been allowed one-third of the value of the mill property, and these prior incumbrances would have been deducted from the share of the Nances, and their creditors would have had no claim on the share of Rainey. So, after the firm debts are paid, Rainey is entitled to receive, out of the fund remaining, his share, without deducting from it any portion of the decree for the mechanics' lien, or Meyer's mortgage, before the separate creditors can participate in the Nances' share. Rainey, to the extent of his third interest in the firm property, must be considered as a creditor of the firm, whose debt is deferred to all of the other firm creditors, but preferred to the separate creditors of the Nances. The decree of the court below, being opposed to the views here expressed, is reversed and the cause remanded.

*Decree reversed.*