H. H. WILLIAMSON ET AL.

v.

GEORGE F. ADAMS.

</div>

1. Partnership assets.—The right to have the partnership assets applied to the payment of the partnership indebtedness is for the benefit of the partners. The creditors of the firm have no such right except through the partners. The members of the firm during its existence may consent to the appropriation of the firm assets to the payment of the individual creditors of each member of the firm, or to the individual creditors of one member.

2. Sale to copartner.—A sale by one partner of his interest in the

Williamson v. Adams.

firm to his copartner, upon his assuming and agreeing to pay the debts of the firm, is a personal obligation to pay, and the right to sell and dispose of the assets is vested by the sale in the copartner, free from any lien on the assets for the payment of the firm indebtedness.

3. WHEN NO SALE—Where there has been no sale by one party to his copartner of his interest in the partnership property, but the same is left with the copartner to sell and dispose of, and pay the debts, the right of the retiring partner to have the assets so applied still exists.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding. Opinion filed August 7, 1885.

Mr. J. C. GARVER, for appellant; that a promise by the purchasing partner to pay the firm debts creates only a personal obligation and not a lien, and does not prevent such partner from using the goods in payment of his individual debts, cited Rankin v. Jones, 2 Jones, Eq. R. (N. C.) 169; Hapgood v. Cornwal, *ex parte* Williams, 11 Ves. 3; Goembel v. Arnett, 100 Ill. 34; Parker v. Merritt, 105 Ill. 293.

Mr. C. M. BRAZEE, for appellee; that partnership assets are first applicable to the payment of partnership debts and liabilities, without any special agreement, cited 1 Parsons on Contracts, 174; Rainey v. Nance, 54 Ill. 29; Wilde v. Chapman, 4 Edwards' Ch. 697; Parsons on Partnership, pp. 256, 365, 520.

WELCH, J. This was a bill in equity filed by the appellee against William B. Shaut and F. D. Williamson, and H. H. Williamson and Amasa Hutchins, to reach certain goods in the possession of said Hutchins, levied upon by him as sheriff, under an execution that issued upon a judgment in favor of F. D. Williamson and H. H. Williamson, partners, doing business under the firm name of F. D. Williamson and son, against William B. Shaut, and to have them applied in the payment of the firm debt of Shaut and Adams. The bill alleges that in September, 1883, the complainant and the defendant William B. Shaut, were partners in the merchant tailoring business in the city of Rockford, Illinois. That on

September 22, 1883, said partnership was dissolved, the complainant retiring and the defendant Shaut continuing the business. That he made the sale of his interest in said partnership upon the consideration that Shaut would pay to him $250 in goods, assume and pay all of the firm indebtedness of Shaut and Adams, out of the assets of said firm. That the assets of the firm were more than sufficient to pay off and discharge the indebtedness of the firm. That the defendants, William B. Shaut, F. D. Williamson and H. H. Williamson, combined and confederated together to cheat and defraud him out of his just rights in and to the stock of goods aforesaid, and that said Shaut, in pursuance of said fraudulent purpose, purchased his interest in said stock of goods and business and gave his note for $250 therefor, payable in six months, and that in pursuance of said plan to cheat, wrong and defraud him and the creditors of the firm of Shaut and Adams, and to defraud him of all his rights in said stock of goods, the said Shaut, without any consideration whatever, on the 23d day of October, 1883, made, executed and acknowledged a judgment note of $1,750, to the said F. D. and H. H. Williamson. That said note was given for the fraudulent purpose of appropriating said stock of goods to his own use and benefit, and that judgment was, on the 19th day of November, 1833, taken on said note by the said Williamsons for the sum of $1,790 and costs, and execution was issued thereon on the same day, and placed in the hands of the defendant Amasa Hutchins, as sheriff, to levy, and that said execution was, on the said 19th day of November, levied upon the said stock of goods by said sheriff. And prays for an injunction restraining them from in any manner attempting to enforce said judgment, execution or levy, or from in any manner proceeding or attempting to proceed to sell said stock of goods under or by virtue of the execution or the levy thereunder, and from removing, selling or incumbering said goods or any part thereof, etc. The defendant William B. Shaut, files his answer and admits that the partnership was dissolved; that Adams sold and conveyed to him all of his interest in said copartnership, its assets, notes, stock,

accounts, good will and lease of place of business, and that he assumed and agreed to pay the debts of the firm. He expressly denies that he ever agreed, or that it was the intention of either party that said stock, or any part of it, was to be set apart and closed out to pay debts. He denies all fraud in the purchase of said stock, and denies that he and the Williamsons combined or confederated to cheat or defraud him, but states that the note was given for the consideration as shown in the note. The defendants Williamson file their joint answer denying all fraud, or notice of any claim or lien of said complainant upon the stock, and deny that said note was without consideration, but state that the consideration named in said note was the consideration furnished by them to said Shaut.

The defendant Hutchins files his separate answer, admitting the levy of the execution, and that he had advertised the property for sale, and states that he has no knowledge of, or interest in any of the other matters alleged in the bill. Replication filed and cause heard on bill, answers, replication and proofs. Decree in favor of appellee. The court found that said Shaut received said goods as trustee, burdened with the trust of paying the partnership debts, and that they should be so applied. From which decree this appeal is taken. The question presented in this record for our consideration is: Did Adams sell his entire interest to his copartner Shaut, Shaut assuming and agreeing to discharge all of the liabilities? The contract of dissolution made the 23d day of September, 1883, was as follows: "Articles of agreement made and entered into by and between W. B. Shaut and Geo. F. Adams, copartners, under firm name and style of Shaut and Adams. It is mutually agreed by and between said parties, that said copartnership be, and the same is hereby dissolved; said Shaut pays to said Adams, the receipt of which is hereby acknowledged, out of goods of stock in trade, $250, in full of his right, title and interest in said firm, in its stock in trade, good will, asse s, notes or accounts. Said Adams hereby sells and delivers all his interest in said copartnership, its assets, stock, notes, accounts, good will and lease of place of

business to said Shaut; said Shaut also hereby assumes to pay
all the indebtedness and liability of said firm of every kind,
and agrees to pay the same in consideration of the title and
interest hereby sold to him; said Shaut is to have immediate
possession of the interest bought, and of the place of business.
The stock to the value of $250 is to be taken by Adams at its
first cost, to be agreed upon by parties.   To which said par-
ties bind themselves, their executors, administrators and as-
signs each to the other.   In witness whereof we have here-
unto set our hands   and seals this 23d day of September,
1883.

<div align="right">W. B. SHAUT,   [SEAL.]<br>
GEO. F. ADAMS.  [SEAL.]"</div>

Notice of dissolution was immediately published, stating
that Adams had retired, and that Shaut continues the busi-
ness, assumes the liabilities of the firm, and is the owner, and
is entitled to collect all indebtedness due the firm; which notice
was seen by Williamson on the day it was published.   A note
was taken for the $250, to be taken in goods by Adams, payable
in six months.   It is claimed by appellee that Shaut took the
goods under an agreement that they should be applied to the
payment of the firm debts, and to nothing else.   Adams states
that his understanding on the dissolution was that Shaut
should continue the business and dispose of the goods, and
out of the proceeds pay the firm debts.   Perry and Snyder and
Lange state that they understood from Shaut that he had
assumed and agreed to pay the firm indebtedness, and that the
goods should be appropriated for that purpose.   Shaut denies
that he ever agreed to dispose of the goods and out of the pro-
ceeds to pay the firm indebtedness, or that the goods should
be appropriated for that purpose.   Williamson denies any no-
tice of any claim of Adams on the goods for the payment of
firm debts.   In Ladd v. Griswold et al., 4 Gil. 36, Justice
Treat says:   "Each partner has a concurrent title to the whole
of the partnership property, and he is individually liable for
all the partnership obligations.   He has the specific right to
have the partnership property faithfully applied to the pay-
ment of the joint debts; and after the joint debts are satisfied

Williamson v. Adams.

he is entitled to a share of the surplus. This rule is for the benefit and protection of the partners themselves. The equity of the creditor is of a dependent and subordinate character, and is to be enforced through the medium of the equities of the partners.

. "The partners may part with this right to have the joint property applied to the payment of the joint demands, and when they do so the equity of the creditors is at an end. This is done where one partner sells out his entire interest in the concern to his copartner. In such case the purchasing partner takes the property fully discharged from the lien of his copartner, and the equity of the creditors being subordinate to the lien of the partners, the property is wholly freed from the claims of the joint creditors. What before was joint property now becomes the separate property of one of the partners." In Hapgood et al. v. Cornwell et al., 48 Ill. 65, Justice Lawrence says: "The first question in this case is, was Hapgood practicing a fraud or a wrong upon the creditors of the firm, by suggesting that Amory Bigelow should buy the interest of his partners and secure the debt to him with the firm assets? It would undoubtedly have been a wrong if the law recognized the firm creditors as having a superior equity to that of individual creditors, for payment from the partnership assets. But it does not. It recognizes the members of the partnership as having a superior lien on the partnership property for. the payment of the firm debts, and allows the creditors to avail themselves of this lien to the exclusion of individual creditors, when it has not been surrendered by the partners. Thus, if all the members of the firm agree to the appropriation of firm property in payment of an individual debt, due from one member of the firm, the creditor would take the property discharged of any claim in equity of the partnership creditors, and this because the members of the firm have parted with their lien, and the creditors have none except through the partners. The same result follows from a sale to one partner by another. It also necessarily follows if the law holds such a transaction legal, and acknowledges no inherent claim to priority on the part of firm cred-

itors, that an individual creditor is guilty of neither wrong nor fraud in requesting his debtor to procure the consent of his copartners, either by purchase or otherwise, to a surrender of partnership property in payment of the individual debt. These principles were fully recognized by this court in Ladd v. Griswold, 4 Gil. 36, and are the settled law." The same rule was announced in Rainey et al. v. Nance, 54 Ill. 29, and in Goembel et al. v. Arnett et al., 100 Ill. 34. It is held that the promise of one partner to the other upon a purchase of the entire stock of goods of the firm to pay the partnership debts, will not create any lien on the goods sold. It creates a personal obligation on the part of the purchaser, and will not of itself prevent the latter from subsequently selling the goods for the payment of his individual debts. In the case of Parker v. Merrill, {105 Ill. 293, it was held that when, on the dissolution of a partnership, the articles of dissolution provided that an invoice of the goods and schedule of the firm debts should be made, and that the surplus of the assets above the indebtedness should be divided, and that one partner should retain a sufficient amount of the goods from which he agreed to pay such debts within a given time, and as rapidly as such assets could be realized for that purpose, the partner so retaining the goods continued the business, and a creditor of such partner, having notice of the facts, levied his execution upon the goods, it was held in that case, that the retiring partner could maintain a bill in equity to enjoin the sale on the execution, and have the proceeds of the goods applied in payment of the firm debts, and that the interest of the retiring partner did not pass by the articles, there being no sale thereof.

From the foregoing authorities we deduce the following well recognized principles: That the right to have the partnership assets applied to the payment of partnership indebtedness is for the benefit of the partners. That the creditors of the firm have no such right except through the partners. That the members of the firm, during its existence, may consent to the appropriation of the firm assets to the payment of the individual creditors of each member of the firm, or to the

Williamson v. Adams.

individual creditors of one member. That a sale by one part-
ner of his interest in the firm to his copartner, upon his as-
suming and agreeing to pay the debts of the firm, is a personal
obligation to pay, and the right to sell and dispose of the as-
sets is vested by the sale in the copartner, free from any
lien on the assets for the payment of the firm indebtedness.
That when there has been no sale by one partner to his co-
partner of his interest in the partnership property, but the
same is left with the copartner to sell and dispose of and pay
the debts, the right of the retiring party to have the assets so
applied still exists, no sale of his interest having been made.
The evidence in this case shows that there was a sale of the
interest of Adams to his copartner, Shant, of his entire inter-
est in the firm, Shant assuming to pay the firm indebtedness.
This is all the written contract and notice show. There is
nothing in either to indicate that the goods were left with
him in trust to be sold, and the proceeds to be applied in the
payment of the firm indebtedness. The written contract can
not be changed in its terms by parol. The only notice to the
Williamsons was the published notice. Whatever rights
Adams had previous to this sale were surrendered by him on
his sale, and the firm creditors had no rights except through
him. He having surrendered his, they can have none. This
case does not come within the rule of Parker v. Merrill, *supra*.
We are of opinion this stock of goods was subject to this levy
and sale under this execution, and the court erred in setting
aside the levy and perpetually enjoining the sale, in directing
the sheriff to turn the goods over to the master in chancery
to be by him applied in the payment of the partnership in-
debtedness of Shant and Adams, and in not dissolving the
injunction and dismissing the bill. For the errors herein in-
dicated this cause is reversed and remanded with directions
to enter a decree dissolving the injunction and dismissing the
bill.