ARCHIBALD C. WADSWORTH *et al.*

*v.*

GEORGE W. LAURIE.

*Filed at Springfield November 10, 1896.*

1. PARTIES—*plea of non-joinder—plaintiff need not join former partners.*  A creditor suing stockholders of an unincorporated bank need not join as defendants former stockholders who have transferred their stock in a manner not provided for in the articles of association, where the bank has recognized such transfers as valid and consented to.the stockholders' retirement.

2. SAME—*equitable owner of stock need not be joined.*  A joint stock company cannot successfully defend a suit at law upon the ground that plaintiff has failed to join as defendant an equitable owner of stock, where the stock stands in the name of a trustee, who is made defendant and whom the company has regarded as the legal owner.

3. ATTACHMENT—*may not issue for mere constructive fraud.*  To justify the issuance of an attachment for fraudulent disposition of property, such disposition must have been made with fraudulent intent, and not merely under circumstances which equity might regard as constructively fraudulent as against creditors.

4. FRAUD—*cannot be predicated on an act otherwise blameless because done without legal authority.*  The fact that a judge, in vacation, at the instance of the managing partners of a bank, appointed a receiver therefor, does not charge such partners with a fraudulent

purpose as a ground for attachment, although a judge cannot legally appoint a receiver in vacation and the application was made at an unusual hour.

5. SAME—*when trust deed of defendant in attachment is not fraudulent.* The making of a trust deed is not ground for attachment where the conveyance does not appear to have been made in bad faith, and the debt secured thereby is not colorable or mis-stated in any particular.

6. EVIDENCE—*what competent on issue of non-joinder.* Where a defendant partnership in a suit at law raises the issue of non-joinder of partners, it is proper to admit in evidence a bill in chancery for a dissolution of the partnership filed by the defendants, to show they did not regard as partners the parties sought to be joined.

7. TRIAL—*giving of peremptory instruction for defendant on issue in attachment—when not error.* If, on the trial of the issue on the affidavit for attachment on the ground of fraud, the court is satisfied that the acts of the defendant proved by plaintiff do not, in law, amount to fraud, it is proper to instruct the jury to find for the defendant on that issue.

*Wadsworth* v. *Laurie,* 61 Ill. App. 156, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

MORRISON & WORTHINGTON, and RICHARD YATES, for appellants:

In all actions at law by and against unincorporated associations all members must be made parties, as in the case of ordinary partnership. 2 Lindley on Partnership, chap. 2, p. 1083.

Unless there are some special circumstances creating a separate liability, a contract which is binding upon the firm is binding upon all the partners jointly and upon none of them severally. 1 Lindley on Partnership, 366.

Where there are several parties, if their contract be joint they must all be made defendants, although they subsequently arrange among themselves that one, only, of them shall perform the contract. And a partner who retires from the firm is liable for the old debt, although

the debt be carried, by consent of the creditor, to the account of the remaining partners. 1 Chitty's Pl. 42.

Joint contractors must all be sued, although one has become bankrupt and obtained his certificate, for if not sued the others may plead in abatement. 1 Chitty's Pl. 42 *a*; *Pettis* v. *Atkins*, 60 Ill. 454.

OWEN P. THOMPSON, and JOHN A. BELLATTI, for appellee.

Per CURIAM: When this case (with another) was heard in the Appellate Court two opinions were delivered by Mr. Justice WALL, one upon the issue made by the plea in abatement for the non-joinder of proper parties defendant, and one upon the issue made upon the attachment. They were as follows:

"These cases all stand upon substantially the same ground. A joint stock company known as the Central Illinois Banking and Savings Association was organized December 14, 1867, with a capital stock of $100,000, divided into one thousand shares of $100 each, for the purpose of transacting a general banking business. The articles of association provided for the election of a board of thirteen directors, who were to elect a president, vice-president and a cashier, with various other provisions in regard to the mode of conducting the business, among which was one to the effect that stock in the association should be assignable and transferable only on the books with the consent of the board of directors, and in case of refusal by the president or cashier to assent to such transfer of stock the holder should be entitled to require the association to take it at a price to be ascertained in a specified way. The association was to continue for twenty years, and started with some twenty-eight members. Certificates of shares were issued in the usual form, and from time to time these were transferred and canceled, the stock being sold to other persons or to the company until on the 25th of August, 1893, when the bank

suspended. All the stock outstanding was held by the persons who were named as defendants in the cases now under consideration. On that day the present appellants filed a bill in chancery in the circuit court, in which they named themselves and the others who were made defendants herein as the sole and only holders and owners of stock in said association, and obtained an order placing the assets of the concern in the hands of a receiver. The present actions were severally brought by depositors to recover the balances due them when the bank suspended.

"The only defense made at the trial was on the pleas of non-joinder, in which it was averred that the various persons who had signed the articles of association were jointly liable and should have been joined as defendants. This theory of non-joinder rests upon the assumed fact that none of the parties named in the pleas had transferred their stock in the manner provided by the articles of association. They had merely sold at private sale without notice to any one and without the consent of the board of directors or a transfer on the books of the association, yet in every instance when the sale was made to other persons the old certificates were assigned and canceled and new ones issued instead, and when the bank bought, the certificates were merely assigned and canceled. In a word, the mode prescribed by the articles for such transfer was not observed, though the bank in every instance recognized the transfer as valid and dealt with the assignee without objection. Some of these transfers were made before the plaintiffs began doing business with the bank and some after. As far back as 1878 the bank bought in some of the stock, and continued to do so until it had acquired some $40,000 of individual holdings. Most, if not all, of the transfers since the accounts of the present plaintiffs began were to the bank, the last one having been made on the 27th of May, 1892. One of the persons named in the pleas, Mrs. Eliza C. Adams, held no stock in her own name, but one hundred

and twenty-eight shares were held by L. W. Brown, one of the defendants, as trustee for her, the certificates being issued to Brown as trustee and he having executed a declaration of trust to that effect.

"Conceding that the transfers were not strictly according to the form and mode prescribed by the articles of association, yet if they were recognized and acquiesced in by the bank, new certificates being issued to assignees or when the bank was the purchaser, the stock being thereafter treated by the bank as its own, the bank,—*i. e.*, those stockholders remaining who exercised the functions of the association,—cannot be heard to say as a matter of defense, when sued upon the obligations of the bank, that those stockholders who had so transferred must be joined as defendants. Whatever might be the rights of creditors, the effect of such transfers, as between the parties thereto, was to substitute the assignees for the assignors, with a corresponding transfer and release of liability in every instance. When the bank issued a new certificate of stock it accepted the person named therein for all purposes, instead of the former holder, and when the bank itself bought the stock it assumed all the burdens of the former holder. Such was the necessary legal implication, otherwise the transaction was mere child's play.

"Cases cited in the briefs where creditors sought and were permitted to hold as partners stockholders who had not withdrawn according to the articles of association are not in point. That is not the question here, but whether those who remain as stockholders can compel the creditors to join, as co-defendants, other former stockholders who have retired with their consent, although not in the exact manner pointed out by the articles. Those articles were for the benefit and protection of the members of the association in the first instance, and certainly it is competent for the association and its members, as between themselves, to waive any of the provisions

thereof, and when they have done so they are estopped to set up the irregularity.

"This view will dispose of the pleas of non-joinder as to all the parties named therein except Mrs. Adams. As already stated, there was no stock standing in her name. It appears that her husband acquired one hundred and twenty-eight shares of the stock many years ago, and for some purpose, presumably proper, caused a certificate for that amount to be issued to her brother, L. W. Brown, as trustee, and the latter executed a declaration of trust showing that he held it for her use and benefit. The stock was carried on the books in the name of L. W. Brown, trustee, though dividends were paid to Mrs. Adams directly. The bank recognized Mr. Brown as the holder of the stock, and so, in point of law, he was. The equitable right was in Mrs. Adams, but the legal right was held by him. In a proceeding at law, as this was, he was the proper person to consider as the holder of that stock. So far as disclosed by the facts in this record she was not regarded by the bank as a stockholder, nor can the person now sued for the debt of the bank set up as a defense hereto that she should have been joined as a defendant.

"In this case, also, the appellants confine their discussion of the subject of non-joinder to William Brown and Mrs. Adams, though the plea itself seems to be the same as in the other cases, including all those who signed the articles of association originally. William Brown sold his stock to the association in 1890, was never afterward regarded by it as a member, and stands on the same footing as the other individuals whose interests were thus absorbed." *    *    *

"The affidavit for attachment alleged that Lloyd W. Brown, within two years prior to the date, had 'fraudulently conveyed or assigned and disposed of his effects and property, or a part thereof, so as to hinder and delay his creditors.' A plea was filed traversing the affidavit,

and the issue was tried by jury. At the close of the testimony the court instructed the jury to find the issue for the defendant, which was done. It is urged that herein the court erred.

"The evidence relied upon by the plaintiff to support the attachment was: First, that on the 8th day of May, 1893, the said Brown conveyed to W. E. Vietch, cashier of the Central Bank, 1004 acres of land for the expressed consideration of $75,000, which was filed for record August 26, 1893,—the day following the appointment of the receivers on the bill in chancery heretofore referred to; second, the filing of said bill, under and pursuant to which said receivers were so appointed and took possession of all the assets of said bank; third, a trust deed executed by said Brown to E. P. Kirby, September 13, 1893, covering some 1500 acres of land, to secure sundry items of indebtedness to different persons, aggregating over $98,000; fourth, a mortgage by said Brown to Mrs. Adams, dated July 20, 1893, covering 800 acres of land, to secure an indebtedness of $60,000, and any additional sum that might afterwards be loaned by the mortgagee to the mortgagor.

"In disposing of the question here presented it is important to ascertain, in the first place, what is the meaning of the statutory provision upon which the writ of attachment was based. The Supreme Court have construed the statute in the case of *Weare Commission Co.* v. *Druley,* 156 Ill. 25. In substance the ruling is, that the writ may not issue for mere constructive fraud as contradistinguished from fraud in fact. In other words, though the transaction be such that a court of equity might regard it as constructively fraudulent and therefore subject to be set aside at the instance of creditors, yet unless there was a fraudulent purpose or design actuating the defendant the case is not within the statute. Applying the rule so announced to the facts in proof, we entertain no doubt that the plaintiff wholly failed to sustain the charge

made in the affidavit, and that the court was perfectly justified in the instruction to find for defendant.

"Regarding the first transaction,—the deed of a valuable tract of land to Vietch, the cashier of the bank,—it appears the purpose was to strengthen the bank, and while the deed was absolute on its face it was subject to a condition that the grantee should hold the land for the protection of the bank, the grantor to enjoy merely the use and occupancy, and that when the necessity for such protection should no longer exist the lands were to be reconveyed to the grantor. Conceding, for the sake of argument, that equity would hold such a transaction as voidable at the instance of creditors, yet very clearly there was no dishonest purpose manifested thereby. On the contrary, the purpose was laudable,—*i. e.*, to secure and protect the creditors of the banking house of which the grantor was one of the members,—and as a matter of fact the lands so conveyed were appropriated by the receivers as a part of the bank assets, and the plaintiff will, as a creditor of the bank, receive his due share of the proceeds.

"As to the filing of the bill to wind up the concern, and, as a preliminary step, placing the assets in the hands of a receiver, we are unable to discover fraud, either actual or constructive. When it was ascertained that by reason of the existing conditions the bank could no longer be conducted with safety, it was the legal duty of those in control to suspend, and take such course as would insure a fair distribution of the assets among the creditors. It would have been indictable to continue receiving deposits when the fact of insolvency was known. As a matter of prudence, and in justice to all concerned, the first public announcement would be that receivers had been appointed. The honest object being to secure an equitable distribution of the assets, it was entirely proper to place the entire estate in the custody of the law. The fact that the application for a receiver was

164—4

made at an unusual hour, and that the order was made by a judge in vacation, cannot be urged as proof of a fraudulent purpose. It was necessary to proceed with haste, and on account of the absence of counsel the application was somewhat delayed. Nor is the defendant to be charged with a fraudulent purpose merely because, as a matter of law, it is not competent for a judge acting in vacation to appoint a receiver. While knowledge of the law is to be inferred for certain purposes, yet this is a mere legal presumption. It is a maxim that ignorance of the law does not excuse, but fraud is not to be inferred from or predicated upon an act otherwise blameless, because done without legal authority. Here the defendant acted upon the advice of counsel and obtained an order from the judge of the circuit court, which was supposed to be regular, and was not very uncommon, as a matter of practice. No doubt he acted in good faith, and it would be a gross perversion of the law to make this act the basis for a writ of attachment on the ground of fraud.

"Some stress is laid upon the alleged fact that the bank was kept closed on the 25th of August upon the mere pretext of the death of the mother of Mr. Vietch, the cashier, but in view of all the proof we regard the point as requiring no consideration.

"As to the deed of trust and the mortgage there is nothing upon which the charge of fraud can rest. It does not appear that these conveyances were in bad faith, or that the several debts they were given to secure were either colorable or misstated in any particular.

"Regarding the proof as a whole, we are satisfied a verdict for the plaintiff would necessarily have been set aside. In such a state of case it is proper to instruct the jury to find for the defendant. *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340."

We fully concur in the conclusions reached by the Appellate Court and in the views there expressed, which we here adopt.

So far as the first branch of the case is concerned, all questions of fact upon which the judgment rests have been finally settled against appellants by the affirmance of the Appellate Court, and but little else remains of the controversy. Some criticism is made upon some of the instructions, but no sufficient grounds are pointed out in this respect to authorize a reversal of the judgment.

The point is made that the circuit court erred in admitting in evidence, on the part of the defendants, on the trial of the issue of non-joinder, the bill in chancery filed by the plaintiffs on their application for a receiver. The bill was brought by the plaintiffs for the appointment of a receiver and to dissolve the partnership and wind up its affairs. The fact that the plaintiffs did not make the defendants parties to that bill was some evidence, in connection with its allegations and purpose, that they did not then regard them as partners in the concern. The bill was properly admitted.

Finding no error in the record, the judgment of the Appellate Court will be affirmed.     *Judgment affirmed.*