## Hargadine-McKittrick Dry Goods Co. v. John Belt and A. J. Cook, partners, etc.

1. FRAUD—*A Question of Fact.*—The question of fraud is one of fact for the determination of a jury.

2. PARTNERSHIP—*Power Over Firm Property.*—A partnership has the same power over the firm property that an individual has over his own property.

3. SAME—*Debts to be Paid out of Firm Assets.*—Partnership creditors are to be paid out of firm assets, when for any reason a court of equity comes into possession of its assets to administer upon them.

4. SAME—*Misapplication of Firm Assets.*—For one partner without the concurrence of his copartner to apply the assets of the firm in paying his individual debts is a wrong against the copartner, but not against firm creditors. The law recognizes no lien or equity in favor of firm creditors on the assets of the firm.

5. SAME—*Application of Firm Property to Firm Debts.*—Each partner has a right as against his copartners to have the firm property applied in payment of partnership debts.

6. SAME—*Rights of Firm Creditors.*—The payment of his individual debt by a partner without the consent of his copartners is a wrong that the non-consenting partner only may redress, in the absence of an intent to defraud creditors. A creditor of the firm, so long as the firm, whether solvent or insolvent, is in control of its assets, can not take it upon himself to redress the wrongs suffered only by the non-consenting partner.

Attachment.—Appeal from the Circuit Court of Saline County; the Hon. Oliver A. Harker, Judge, presiding. Heard in this court at the August term, 1897. Affirmed. Opinion filed March 1, 1898.

## Statement of the Case.

In the latter part of 1895, appellees, as copartners under the firm name of " Belt & Cook," engaged in the mercantile business at Harrisburg, in this State, and borrowed of the First National Bank of Harrisburg $1,000, for which they gave their judgment note with security. Cook also borrowed $200 of the Bank of Harrisburg, and Belt borrowed $160 of one Rose, and the money so borrowed was put into the firm, and used by it in conducting its business.

In the spring of 1896, the firm became indebted to appellant in the sum of $1,040, for goods purchased of it. Some time in that year and before this suit was begun, Cook was engaged in repairing his house, and some of the persons at work for him, took pay out of the store of Belt & Cook, the total amount so paid being less than $10, after excluding an account of $38, which the firm had on its books against a party not able to pay it in money, which Cook got the debtor to pay in labor on his house, when Cook charged himself with the amount, with the knowledge of his partner.

In the latter part of August, 1896, appellant sent its claim to its attorneys at Harrisburg, who pressed appellees for payment, but received the firm's promise to pay $200 every two weeks until the claim should be paid. This promise appellees failed to keep. Cook's individual note of $200 and Belt's individual note to Rose of $160, were paid with the money of Belt & Cook, with the knowledge of both partners; the latter note was paid the day before this suit was brought. Appellant's attorneys desired appellees to give a judgment note for the claim, which appellees refused. They then threatened attachment proceedings, and appellees proposed to sell to appellant their entire stock of goods, amounting to from $3,000 to $3,500, if appellant would pay appellees' note of $1,000 to the bank and cancel its claim against them. This appellant refused to do. On Septem-

ber 15, 1896, this suit was brought by attachment, and a levy made on some real estate and the stock of goods. The affidavit for the attachment alleged that appellees had, within two years, fraudulently conveyed their effects so as to hinder and delay their creditors; that in the same time they had fraudulently concealed and disposed of their property for the same purpose; and that they were about to conceal their property for the same purpose. When the attachment was levied appellees were conducting their business as usual. A plea in abatement was filed to the affidavit; a trial was had and a verdict was rendered for appellant for the amount of its claim, and for appellees on the attachment, and the court rendered judgment on the verdict. Plaintiff below brings this appeal from the judgment quashing the writ of attachment.

CHOISSER, WHITLEY & CHOISSER, attorneys for appellant.

PARISH & PARISH and W. F. SCOTT, attorneys for appellees.

MR. JUSTICE BIGELOW DELIVERED THE OPINION OF THE COURT.

A number of errors have been assigned, but none are relied upon, except those in reference to the giving and refusing instructions.

The evidence relied upon by appellant to show that appellees fraudulently disposed of their property, is that of four acts: First, that Cook's individual note of $200 was paid with money belonging to the firm; second, that Belt's note was paid in the same manner; third, that Cook paid the workmen on his dwelling house with the firm's property; and fourth, that Belt admitted that goods had disappeared from the store while he was absent in Kentucky. As to the last piece of evidence it was fully submitted to the jury by the third and sixth instructions given for appellant, and we are satisfied with their finding. We are not prepared to hold appellees' second instruction correct, but in the view we take of the case it could have done appellant no harm.

On the entire evidence appellant could only have made its attachment good by having the jury instructed as prayed for in its refused instructions, which are as follows:

"You are instructed that where two or more individuals combine their capital for the purpose of jointly conducting and carrying on a business as a firm or copartnership, and such firm, in the transaction of their said business, contract copartnership debts, such debts are binding upon the assets and property of such firm; and should a member of such firm use the assets or a part thereof, while said firm were so indebted, for the payment of his individual indebtedness, to the detriment or exclusion of the creditors of such firm, then such act would be an act in fraud of creditors of said firm.

"The court instructs you that any disposition of partnership effects by the firm or any member thereof, which operates to defeat the right of joint creditors, and to give individual creditors priority over them, is regarded as showing an intent to defraud them, which will support an attachment, charging the fraudulent disposition of partnership assets, so as to hinder and delay the creditors of the firm.

"You are instructed that the appropriation by a debtor, of money belonging to his firm to the payment of his individual debts, is a fraud upon creditors of the firm, and will support an attachment wherein it is charged that the assets of said firm have been fraudulently disposed of, to the injury of the creditors of such firm."

The principles that govern the powers of copartners to appropriate the firm property in payment of firm debts, or in payment of individual debts, or in the sale of the common property, either to one of the partners or to third parties, have been so fully passed upon and determined by the Supreme and Appellate Courts of this State, that we feel it unnecessary to attempt to add anything further. Hapgood v. Cornwell, 48 Ill. 65; Rainey v. Nance, 54 Ill. 29; Goembel v. Arnett, 100 Ill. 34; McIntire v. Yates, 104 Ill. 491; Young v. Clapp, 147 Ill. 191; Williamson v. Adams, 16 Ill. App. 564; see also Wait on Fraud. Conv., 3d Ed., 388. From these authorities, as well as upon principle, we are of opinion that a part-

nership firm has the same powers over the firm property as an individual has over his property. Each partner has, however, a right as against his copartner, to have the firm property applied in payment of partnership debts, from which equity, results the rule that partnership creditors shall be paid out of the firm's assets, when for any reason a court comes into possession of them to administer.

For one partner, without the concurrence of his copartner, to apply the assets of the firm in paying his individual debts, is a wrong against the copartner, but it is not a wrong against any firm creditor, since the law of this State recognizes no lien or equity in the firm creditor on the firm assets. It is a wrong that the non-consenting partner only may redress. The partnership creditors, so long as the firm, whether solvent or insolvent, is in control of its property, may not take upon themselves to redress the wrongs that the law deems to have been suffered only by the unconsenting partner. Of course these powers must be honestly exercised. If the individual notes of Belt and Cook had represented fictitious claims, the fraudulent intent would have followed from their payment, if the firm were insolvent at the time the notes were paid. It can not, then, be affirmed that when a firm, or any member thereof, honestly devotes the firm property in any other way than in payment of firm obligations, that such acts show a fraudulent intent.

The only case in this State relied on by appellant in support of the refused instructions, is Keith v. Fink, 47 Ill. 272. The question of actual fraud was not raised in that case. What the court would have held, had it been raised, we can not tell; but we know what it has since said in Weare Commission Co. v. Druley, 156 Ill. 25, and in Wadsworth v. Laurie, 164 Ill. 42, where the question was raised, and upon the authority of these cases, we must hold that an attachment can not be maintained under the law of this State, unless fraud in fact is shown, and that the question of fraud is one of fact, to be passed upon by a jury.

The Circuit Court did not err in refusing to give to the

jury the instructions asked by appellant, since, had they been given, the question whether appellee had committed fraud in fact, would have been taken from the jury.

Finding no error in the record, the judgment quashing the writ of attachment is affirmed.