156   25
164   48
63a 514
66a 444
156   25
74a 585
156   25
83a 190
156      25
f93a  1180
156      25
190   1418

## THE WEARE COMMISSION COMPANY

### v.

## MARY A. DRULEY, Admx. *et al.*

*Filed at Ottawa January 15, 1895—Rehearing denied June 15, 1895.*

1. ATTACHMENTS—*constructive fraud not ground for.* Constructive fraud, as distinguished from actual or intentional fraud, is not sufficient for an attachment of property, on the ground that the debtor has conveyed property to defraud creditors.

2. APPEALS AND ERRORS—*judgment will not be reversed where no benefit would result.* A judgment against the administratrix of an insolvent estate will not be reversed on account of errors, where the claim had been already established by allowance in probate, and no practical benefit could result from reversal.

*Weare Commission Co.* v. *Druley*, 54 Ill. App. 391, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

OSBORNE BROS. & BURGETT, for appellant:

If the deed was intended as a mortgage, the fact that Jane Druley came into court and claimed absolute title under the deed is conclusive of her intent to defraud plaintiff, and will disentitle her to any rights under the deed. *Barker* v. *French*, 18 Vt. 460; *Foster* v. *Grigsby*, 1 Bush, 86; *Thompson* v. *Pennell*, 67 Me. 159; *Bank* v. *Godfrey*, 23 Ill. 531; *Larmon* v. *Knight*, 140 id. 232; *Jones* v. *Neely*, 72 id. 449; *Mackie* v. *Cairns*, Hopkins' Ch. 373.

Where a creditor raises a presumption of fraud in a conveyance by his debtor, and it is shown that the debt sought to be collected was in existence at the time of such conveyance, the burden of proof is cast upon the defendants who seek to uphold the good faith of the conveyance. *Hubbard* v. *Allen*, 59 Ala. 283; *Harrell* v. *Mitchell*, 61 id. 271; *Clements* v. *Moore*, 6 Wall. 279; *Callan* v. *Statham*, 23 How. 477; *Alexander* v. *Todd*, 1 Bond, 175; *Knight* v. *Capito*, 23 W. Va. 639; *Goshorn* v. *Snodgrass*, 17 id. 717;

*Smith* v. *Brown,* 34 Mich. 455 ; *Henderson* v. *Henderson,* 55 Mo. 534; *Railway Co.* v. *Bacon,* 30 Ill. 347; *King* v. *Atkins,* 33 La. Ann. 1057; *Ford* v. *Simmons,* 13 id. 397; *Huggins* v. *Ward,* 21 W. R. 917; *Lovell* v. *Payne,* 30 La. Ann. 511; *Apoth. Co.* v. *Bensley,* Ry. & M. 159.

Whenever a confidential relation is shown to exist between the parties, as the blood relationship in this case, they are held to fuller and stricter proof of the payment of the consideration, its adequacy and of the fairness of the transaction, and want of clear proof is evidence of fraud.    *Lloyd* v. *Williams,* 21 Pa. St. 327; *Koch* v. *Rhodes,* 10 Neb. 445 ; *Hawkins* v. *Alston,* 4 Ired. Eq. 137; *Black* v. *Codwell,* 39 N. C. 150 ; *Harrell* v. *Mitchell,* 61 Ala. 271; *Hubbard* v. *Allen,* 59 id. 283 ; *Schaferman* v. *O'Brien,* 28 Md. 565 ; *Seitz* v. *Mitchell,* 94 U. S. 580 ; *Curtis* v. *Wortsman,* 22 Fed. Rep. 893 ; *Tomlinson* v. *Matthews,* 98 Ill. 178 ; May on Fraudulent Con. 236 ; *Draper* v. *Draper,* 68 Ill. 17.

When the parties are relatives or intimate, it will be presumed that they know each other's financial condition.    *Alexander* v. *Todd,* 1 Bond, 175 ; *Thomas* v. *Rembert,* 63 Ala. 561; *Harrell* v. *Mitchell,* 61 id. 270 ; *Castro* v. *Illies,* 22 Tex. 479 ; *Bartus* v. *Tisdall,* 4 Barb. 571; *Burgett* v. *Paxton,* 99 Ill. 288.

GEORGE S. HOUSE, and JOHN H. BRECKENRIDGE, for appellee Mary A. Druley.

W. S. COY, for appellee Jane Druley.

Mr. JUSTICE BAILEY delivered the opinion of the court:

On the third day of September, 1890, the Weare Commission Company commenced its suit in assumpsit, by attachment, against William M. Druley and Albert A. Druley.   The grounds for the attachment, as stated in the affidavit, were, first, that the defendants had, within two years then last passed, fraudulently conveyed or assigned their effects, or part thereof, so as to hinder and delay their creditors; second, that they had, within two

years then last passed, fraudulently concealed or disposed of their property so as to hinder and delay their creditors; and third, that they were about fraudulently to conceal or dispose of their property or effects so as to hinder and delay their creditors.

William M. Druley, at the date of the writ, was in his last illness, and on September 5, 1890, which was two days thereafter, he died. It appears from the return to the writ that the sheriff, on September 5, 1890,—the day of William M. Druley's death,—attached a tract of land in Cook county containing two acres, the land then being, or shortly prior to the date of the writ having been, the individual property of William M. Druley, and that after his death the sheriff also summoned certain insurance companies, who, as it was claimed, were then indebted to William M. Druley individually, as garnishees. No personal service of the attachment writ was had on either of the defendants.

The plaintiff, in its original declaration, declared against the defendants as co-partners, under the firm name of Druley Brothers, upon six promissory notes payable to the order of the plaintiff, two for $2500 each and one for $1000, signed by Druley Brothers, and two for $2000 each and one for $200, signed by Druley Brothers and by William M. Druley individually. On the 17th day of October, 1890, Albert A. Druley entered a special appearance, and suggested on the record the death of William M. Druley, and also filed his affidavit stating, in substance, that the firm of Druley Brothers was composed of William M. Druley and the affiant, and was formed for the purpose of carrying on a grain trade or business in Will county; that William M. Druley, at the time of his death, was a resident of Cook county, the affiant being a resident of Will county; that neither had been served with process, and that no property, rights or credits belonging to the affiant, or in which he had any interest, had been attached under the attachment

writ directed to the sheriff of Cook county; that neither the affiant nor the late firm of Druley Brothers had any property in Cook county, and that all the property, rights and credits seized under the writ were the individual property of William M. Druley. Upon this affidavit Albert A. Druley moved to dismiss and quash the writ of attachment.

This motion was overruled by the court, and at the same time the plaintiff discontinued its suit as to Albert A. Druley, and, by leave of the court, amended all the papers and proceedings in the cause by striking out the words, "co-partners as Druley Brothers," wherever they occurred. It was also ordered that Mary A. Druley, the administratix of the estate of William M. Druley, deceased, be substituted as defendant in place of her intestate, and also that Jesse Druley and Ralph Druley, the heirs-at-law of William M. Druley, be made parties to the attachment issue only, and be summoned as such.

The plaintiff also, by leave of the court, filed a new affidavit in attachment, setting up the indebtedness sued for as being from William M. Druley, in his lifetime, to the plaintiff, and since his death as being due and owing from his administratrix to the plaintiff, and setting up, as against William Druley individually, the same grounds for an attachment alleged in the original affidavit. The administratrix afterwards appeared specially and moved the court to quash the attachment, which motion was overruled. Summons having been served on her, she appeared generally and filed a plea of *non assumpsit* and certain special pleas to the declaration, and also a plea traversing the affidavit for attachment. Issues being formed on these pleas, a trial was had before the court and a jury, at which the court, after the evidence had been heard, instructed the jury to find the issues formed by the plea traversing the attachment affidavit in favor of the defendant. The jury thereupon returned their verdict finding the issues upon the merits of the action

in favor of the plaintiff, and assessing the plaintiff's damages at $13,500, and finding the issues upon the attachment affidavit in favor of the defendant, and the court, after overruling a motion by the plaintiff for a new trial, gave judgment in favor of the plaintiff for the amount of the damages assessed by the jury, and costs, but setting aside and quashing the attachment writ. That judgment has been affirmed by the Appellate Court, and this appeal is from the judgment of affirmance.

The principal controversy, as presented here, turns upon the propriety of the peremptory instruction to the jury to find the issues upon the attachment affidavit for the defendant. If that instruction, and the consequent verdict and judgment, are sustained, it is manifestly immaterial whether the court erred in refusing to quash the attachment on motion of Albert A. Druley or on the subsequent motion of the administratrix.

At the trial evidence was introduced tending to show the following facts: Some time about the year 1885 Jesse Druley, William M. Druley's father, sold a farm in McLean county, and of the proceeds loaned to William M. Druley, or put into his business, about $18,000. William M. Druley afterwards advanced to his father and mother various sums of money, and about March 10, 1887, a settlement was had between them, at which it was found that William M. Druley was indebted to his father in the sum of $10,000. For this sum William M. Druley, with his father's consent, executed his promissory note, dated March 10, 1887, payable to Jane Druley, his mother, five years after date, with interest at the rate of six per cent per annum, payable quarterly. This note remaining wholly unpaid, William M. Druley, some weeks prior to his death,—but whether in payment of or as security for the note is left by the evidence somewhat in doubt,— signed and acknowledged a deed conveying the two-acre tract of land upon which the attachment writ was after-

wards levied, to Jesse Druley, his father, in trust for Jane Druley, his mother.

This deed was executed as the result of considerable negotiation between William M. Druley and an attorney representing Jesse and Jane Druley, such negotiation resulting in an agreement that the deed should be executed, but that if William M. Druley recovered from his illness he should have the land back or that the deed should be returned to him. The deed, after it was signed and acknowledged, remained in the possession of the grantor about two weeks, and he then handed it to his brother, Edwin P. Druley, who was attending and taking care of him in his illness, saying to him that he should take it and carry it in his pocket, and that if he, the grantor, got well he should return it to him, but if he did not he should put it on record. On the second day of September, 1890, Edwin P. Druley, having learned that the firm of Druley Brothers was about to fail, or supposing that it had failed, put the deed on record, and about six weeks afterwards he got it from the recorder's office and delivered it to his father and mother. This deed, and the circumstances attending its execution, constituted the only evidence given by the plaintiff in support of the grounds for an attachment alleged in its attachment affidavit.

It is urged, and with some show of reason, that the deed was never delivered so as to become effectual as a conveyance. The contention is, that Edwin P. Druley took and held the deed merely as agent of the grantor, and that by delivering it to him with instructions to keep it in his pocket and return it to the grantor in case of his recovery, and to record it only in case of his death, the grantor did not, and did not intend to, absolutely yield dominion over it, but that it remained, down to the time of his death, subject to his control, and liable to be recalled by him at any time, and it would seem that if the deed was never delivered it has no tendency to prove the charge of fraud made by the attachment affidavit. But

without determining the question of delivery, we prefer to place our decision upon another ground.

Even if the deed is to be regarded as having been effectually delivered, it must be conceded that there is no evidence of express fraud, or what is usually termed fraud in fact.   There is no evidence of any actual intention on the part of the grantor to hinder or delay his creditors.  But the evidence tends to show that the deed, though absolute on its face, was intended by the parties as a mortgage, to secure the $10,000 note given by the grantor to his mother, and the rule is supported by many authorities that a conveyance of lands absolute on its face but intended as a mortgage or security for a debt is fraudulent and void as against existing creditors, although there may have been no actual intent to defraud. Among the authorities so holding the following may be consulted :   *Simms* v. *Gaines,* 64 Ala. 392;  *Watkins* v. *Arms,* 64 N. H. 99;  *Gregory* v. *Perkins,* 4 Dev. (N. C.) 50;  *Halcombe* v. *Ray,* 1 Ired: 340;  *Cooledge* v. *Melvin,* 42 N. H. 510;  *Winkley* v. *Hill,* 9 id. 31;  *Friedley* v. *Hamilton,* 17 S. & R. 70;  *Harris* v. *Sumner,* 2 Pick. 129.   See, also, *Metropolitan Bank* v. *Godfrey,* 23 Ill. 531.   But we do not wish to be understood as expressing any opinion upon the question whether a deed absolute on its face but intended as a mortgage is constructively fraudulent or not.

The question thus arises, whether, under our statute, an attachment will issue where the fraud charged is a legal or constructive fraud only, as contradistinguished from express or intentional fraud, usually denominated fraud in fact.   This question, so far as we are advised, has never been decided by this court, but it has received consideration by the Appellate Courts in several cases, and in each case it has been decided in the negative.   It first arose in the Second District, in *Shove* v. *Farwell,* 9 Ill. App. 256, and there the court said :  "The law does not allow a creditor to ignore the process of the common law in the collection of his debt, and resort to a summary

seizure of the debtor's property upon *mesne* process, from the fact, alone, that the debtor has, within two years, sold his property or any part of it, or has secured some other creditor by mortgaging or pledging it, even though the attaching creditor should be hindered or delayed in the collection of a just debt. Another element must exist in the transaction—the fraud of the debtor. And in our opinion the statute contemplates that this fraud shall be one of fact, as contradistinguished from a legal or constructive fraud. If a man has shown himself to be dishonest by making a conveyance of his property designing thereby to delay and hinder his creditors, and such effect is produced, then, for the space of two years, the statute permits the creditor to treat him as one who may repeat the fraud, and authorizes its prevention by a seizure of his property upon *mesne* process, and hold it to answer any judgment that may be rendered in the action."

The same question arose in the same district in *First Nat. Bank* v. *Kurtz,* 22 Ill. App. 213, where the same conclusion was again announced. So in the First District, the same conclusion was announced in *Dempsey* v. *Bowen,* 25 Ill. App. 192, and in *Rhode* v. *Matthai,* 35 id. 147. The decision of the Appellate Court in the present case is merely an application of what has become a settled rule of law in that court.

In *Spencer* v. *Deagle,* 34 Mo. 455, an attachment writ was issued under a statute apparently identical with ours, and it was held to be error for the court to refuse to instruct the jury that, to render the deed of trust there in question fraudulent as to the defendant's creditors, it must appear that it was executed for that purpose,—that it was not enough that the effect of the deed was to delay his creditors, but it must have been executed with that purpose and intent.

While some decisions, perhaps, may be found in other States supporting the contrary view, we are disposed to think that the interpretation put upon our statute by

the Appellate Court is the correct one. It seems to be the policy of our Attachment law to give creditors the right to seize the property of their debtors on original or *mesne* process, and hold it for the satisfaction of such judgments as may be subsequently recovered, in those cases where the situation or conduct of the debtors is or has been such as to raise a reasonable apprehension that the ordinary common law processes of the court will be thwarted and thus rendered unavailing.

The Revised Statutes of 1845 authorized attachments for only the first five of the nine causes for attachment specified in our present Attachment act, viz.: First, where the debtor is not a resident of the State; second, where he conceals himself or stands in defiance of an officer, so that process can not be served upon him; third, where he has departed from the State with the intention of having his effects removed from the State; fourth, where he is about to remove from the State with the intention of having his effects removed from the State; and fifth, where he is about to remove his property from the State to the injury of the creditor suing. Here the writ was given only where the debtor was already a non-resident, and so beyond the reach of the ordinary processes of the law, or where there was an affirmative intention and design on his part to place his person and property, or his property alone, beyond the reach of those processes. The writ was given for the purpose of seizing the property so as to forestall its threatened removal, and to hold it as security for the judgment to be recovered.

It can not be doubted, we think, that when the statute was so amended as to add the three causes for attachment set up in this case, the legislature was acting in furtherance of the same general intention expressed in the original act.

The writ was not given for the purpose of enabling the creditor to attack a transaction which is only construct-

ively fraudulent, but to enable him to seize the property of his debtor in cases where fraud has been committed, or contemplated, of such character as to raise a reasonable apprehension that by further fraudulent acts the debtor will put his property and effects beyond the reach of legal process.    But such apprehension does not arise from the commission of a mere legal or constructive fraud.    There evil intention, moral turpitude and actual dishonesty are wanting.    Equity, it is true, will set such transactions aside, in a proper proceeding, at the instance of creditors, but no inference arises that the debtor will attempt, by any dishonest disposition of his property, to interfere with his creditors in the assertion of their just rights.    We are of the opinion, then, that granting writs of attachment in cases where only legal or constructive fraud is shown is outside of the general scheme and purpose of the Attachment law.

It is apparent that any other construction of the statute would often lead to consequences extremely oppressive.    Thus, a sale of goods where possession has not actually been delivered to the purchaser, though valid as between the parties, is constructively fraudulent as to the creditors of the seller, and the goods may be seized by them on execution as his goods, however honest he may have been in the transaction.    In contemplation of law he has made, or attempted to make, a disposition of his property which is constructively fraudulent, and if attachments may issue for constructive frauds, he has thereby subjected himself, however innocent he may have been, to all such attachment writs as his creditors may see fit to sue out against his property for the period of two years.    So if a debtor, in perfect good faith, executes a chattel mortgage to secure an honest debt, but fails to have it executed, acknowledged and recorded in all respects as required by the statute, the transaction is constructively fraudulent and void, as against his creditors. But can it be said that he thereby subjects himself, for a

period of two years, to attachments by any of his creditors?   Other similar illustrations without number will suggest themselves.

In view of these various considerations it seems to us to be very clear that the legislature, in authorizing writs of attachment in cases where the debtor has fraudulently conveyed or assigned his property so as to hinder or delay his creditors, could have had in mind only such conveyances or assignments as are fraudulent in fact, and that it was not their intention to grant this writ where the debtor acts honestly and with no fraudulent purpose or design.   It follows that the instruction to the jury to find the issues upon the attachment affidavit for the defendant was properly given.

The administratrix, by cross-errors, seeks to attack the judgment on the merits.   Without pausing to investigate the points thus raised, it is sufficient to say that no practical benefit can result to her, or to the estate which she represents, by a reversal of the judgment.   It seems to be admitted on all hands that the estate is insolvent, and it also appears that the promissory notes for which the judgment was rendered were, some time prior to the trial of this case, presented to the probate court as a claim against the estate, and that they were duly allowed as such, and there is no suggestion that the allowance of the claim is now called in question by any one.   It thus appears that the administratrix is conclusively bound to pay the claim in due course of administration, and its being evidenced by a judgment of the circuit court adds nothing to her obligation in that respect.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*