## McNeil & Higgins Co. v. Plows & Co.

1.  ATTACHMENT—*Fraudulent Conveyance of Property—Proof.*—In order to sustain an attachment where the grounds relied upon are that defendant within two years fraudulently conveyed his effects so as to hinder and delay his creditors, actual fraud, or fraud in fact, as distinguished from constructive fraud, must be shown.

2.  FRAUD—*As Grounds for Attachment—Proof.*—Actual fraud may be proven by facts and circumstances from which the inference of fraud would be natural and probable, and would be presumed. The mind should be convinced from the proof that the fraud charged had been perpetrated, although there might remain some doubt.

3.  FRAUDULENT CONVEYANCES—*Where Secrecy is a Part of the Consideration.*—Where an agreement is made that "the transaction is to be kept secret until the debtor has an opportunity of escaping beyond the reach of process used by his other creditors, or by which the deed is not to be offered for record until the other creditors threaten suit, will render it fraudulent. Secrecy, in such cases, is a part of the consideration, and transactions contaminated by it ought not to be regarded as *bona fide*.

4.  SAME—*Where a Conveyance is Withheld from the Record.*—Where the conveyance is withheld from the record, so that it may not affect

the financial standing of the grantor, the evidence of fraudulent intent becomes express.

**Assumpsit.**—Attachment in aid.  Trial in the Circuit Court of Cook. County: the Hon. JOHN C. GARVER, Judge, presiding.  Finding and judgment for defendant on the attachment issue; appeal by plaintiff. Heard in this court at the October term, 1898.  Reversed and remanded. Opinion filed June 12, 1899.

**Statement of the Case.**—Appellant begun suit in assumpsit against appellee, a corporation, January 15, 1898, for merchandise and goods sold and delivered to appellee at its request, and on the same day an attachment in aid was issued and levied on certain personalty.  The grounds of the attachment were that "said defendant has, within two years last past, fraudulently conveyed or assigned its effects, or a part thereof, so as to hinder and delay its creditors," and that "said defendant has, within two years last past, fraudulently concealed or disposed of its property so as to hinder and delay its creditors, and is about fraudulently to sell, assign or otherwise dispose of its property or effects so as to hinder and delay its creditors."

Plaintiff had judgment by default on the merits for $899.63, but a plea was filed traversing the facts alleged in the affidavit for attachment.  At the close of the plaintiff's evidence, on a trial of this issue before the court and a jury, on motion of defendant, the court instructed the jury to find the attachment issue for defendant, which was done, and a judgment was rendered on the verdict, from which this appeal is taken.

The evidence shows that in April, 1897, the defendant was largely insolvent, and during all the period of time involved in the evidence, or covered by the transactions brought in question in this case, the defendant was insolvent; that on the 28th of April, 1897, the defendant was indebted to one Richter in the sum of $3,000, being an unpaid balance of a loan of $5,000; and that on that day the defendant executed to Richter a bill of sale of all its stock, fixtures and utensils located in the candy department and stock room of Plows & Co., at 263 State street, Chicago,

Illinois, worth $4,200; that by agreement between Richter and the officers of the defendant, this bill of sale was left with one Edward Glickauf in escrow, and a resolution of the board of directors was duly adopted providing therefor, and it was agreed further that the existence of this bill of sale should be kept secret, and that in case of any danger to Mr. Richter by reason of any other creditors of Plows & Co. pushing their claims, or trying to force things, Mr. Richter was to be handed these documents and take possession of Plows & Co.'s goods, etc., at the Rothschild's store, 263 State street, Chicago; that the officers of the defendant agreed to notify Glickauf, who held the bill of sale in escrow, of any danger, and he was then to turn the papers over to Mr. Richter; that the indebtedness secured in this manner was finally fully paid in October, 1897, out of the proceeds of sale of the department at Rothschild's; that in April, 1897, the defendant company negotiated a loan from one Stephen L. Bartlett, of the sum of $5,000, to be secured by chattel mortgage, and upon the presentation of this document to the president, Hopkins, he refused to sign the same, unless it was agreed that it should be held off from the record, or held in escrow, and Hopkins also testified that he was afterward given the assurance that Bartlett, the mortgagee, had agreed to that, and that he signed the note and mortgage on those conditions; that they were to be held in escrow, himself, Mr. Brown and Mr. McQuiston (two other directors and officers of the defendant corporation) assuring Mr. Cutter, Bartlett's agent, "that in event of any of Plows & Co.'s creditors attempting to push their claims, which would be liable to force an issue, that he would be notified immediately, that these papers might be placed on record to protect Mr. Bartlett;" that this was consented to on the part of Bartlett and his agent, and the papers were thereupon delivered.

The president of the company testified, in respect to the bill of sale given to Richter, that it was agreed "that in case any of Plows & Co.'s creditors attempted to take possession, or bring any suits which were liable to invalidate

Richter's claim, he would be notified," and "that Mr. Richter and the man who held it in escrow were asked to keep it secret and not to file it for record."

The evidence further shows that the plaintiff (appellant) was first informed of these transactions on the day before it issued its attachment, and that all of the goods sold by plaintiff to defendant had been sold subsequent to the first of May, 1897; that is, all the goods had been sold without any knowledge of either of these transactions.    The $5,000 mortgage to Bartlett was placed on record the same day the attachment was begun, to wit, January 15, 1898, at 3:30 P. M., whether before or after the attachment does not appear.

FLOWER, SMITH & MUSGRAVE, attorneys for appellant.

An agreement to keep a security secret and to use it only when other creditors seek to enforce their claims, coupled with an agreement by the debtor to advise the holder of the security in case any other creditors should push their claims, is within the express terms of the statute, the necessary effect being to hinder and delay such other creditors. Hurd's Stat. 1897, p. 1875, Sec. 1, Cl. 7; Stockgrowers Bank v. Newton, 22 Pac. Rep. 447; Haas v. Sternbach, 156 Ill. 44; Sternbach v. Leopold, 50 Ill. App. 476; Farguson v. Johnston, 36 Fed. Rep. 134; Weber v. Mick et al., 131 Ill. 520; Blennerhassett v. Sherman, 105 U. S. 100.

It being proven that the defendant procured from the grantees in the bill of sale and chattel mortgage an agreement that the instruments should be kept secret unless other creditors should attempt to push their claims, the intent of the defendant in making the documents was a question for the jury.   Sternbach v. Leopold, 50 Ill. App. 476;  Seals v. Robinson, 75 Ala. 363 (372); Weber v. Mick, 131 Ill. 526; Folsam v. Clemence, 111 Mass. 273 (277); Silvis v. Oltmann, 53 Ill. App. 392; Home Ins. Co. v. Field, 53 Ill. App. 119; Edson v. Hudson, 47 N. W. Rep. 347; Reed v. Noxon, 48 Ill. 323.

While fraud must be proven, nevertheless, it is proven

when facts and circumstances are shown by the evidence from which the inference of fraud is natural and irresistible. Reed v. Noxon, 48 Ill. 323; Bullock v. Narrott, 49 Ill. 62; Draper v. Draper, 68 Ill. 17; Schumacher v. Bell, 64 Ill. 181

MILFORD J. THOMPSON, attorney for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The only question presented is whether there was sufficient evidence of actual fraud to have required the submission of the case to the jury. In order to sustain an attachment under our statute there must be shown actual fraud, or fraud in fact, as distinguished from constructive fraud. Weare v. Druley, 156 Ill. 25, and cases cited.

But such actual fraud may be proven by facts and circumstances from which the inference of fraud would be natural and probable, and would be presumed. The mind should be convinced from the proof that the fraud charged had been perpetrated, although there might remain some doubt. Schumacher v. Bell, 164 Ill. 181–3, and cases cited.

In Sternbach v. Leopold, 50 Ill. App. 476–94, in which there was a question as to whether fraud in fact was shown, this court, while it held that the evidence in the record was insufficient to show fraud in fact, quoted with approval from the Supreme Court of Indiana in Hutchinson v. First Nat. Bank, 30 N. E. Rep. 952, citing many cases, viz.:

" We are satisfied that an agreement for the withholding of a mortgage from the record is not of itself sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent, but that it is a badge of fraud, to be considered with all the other facts and circumstances surrounding the transaction, in determining whether or not there was in fact a fraudulent intent."

The case was affirmed by the Supreme Court (Haas v. Sternbach, 156 Ill. 44–55), in which it is said:

"While the unsworn answer of Henry Leopold sets up conversations between himself and Charles Sternbach relative to keeping the mortgage off record and

concealing it from others, which, if true; would establish a wicked conspiracy to defraud creditors by giving a false credit to himself and his firm, his own testimony does not support these allegations."

From an examination of the abstract and of the answer referred to in that case in this court, we find statements which make the case in point of fact quite similar to the case at bar, and we regard the language of the Supreme Court, when considered with reference to the statements of the answer, as deciding that where a party takes a mortgage and keeps it off record in order to support the credit of the maker, upon the condition or agreement that the maker shall keep him informed of his affairs, so that if any trouble is likely to arise with the maker's creditors the grantee can place his mortgage upon record, such a transaction is a fraud in fact.    See also Weber v. Mick, 131 Ill. 520–6.

In Wait on Fraudulent Conveyances, Sec. 234, the author says that an agreement that "the transaction is to be kept secret until the debtor has an opportunity of escaping beyond the reach of process used by his other creditors, or by which the deed is not to be offered for record until the other creditors threaten suit, will render it fraudulent. Secrecy in such cases is a part of the consideration; the transaction is contaminated by it, and ought not to be regarded as *bona fide*." The statement of the author is supported in principle by the following cases, viz.: Farguson v. Johnston, 36 Fed. Rep. 134; Blennerhassett v. Sherman, 105 U. S. 100–117; Seals v. Robinson, 75 Ala. 363–72; Stockgrowers Bank v. Newton (Colo.), 22 Pac. Rep. 444.

In the Newton case, *supra*, the court holds that where the conveyance is withheld from the record, " so that it may not affect the financial standing of the grantor, the evidence of fraudulent intent becomes express." So, in the case at bar, the evidence being that there was an agreement between Richter and appellee that the bill of sale was to be kept secret, and that in case other creditors should push their claims and that the party holding it in escrow should be notified of any danger in that regard he should turn it over to Richter and he should take possession under it,

also that there was an agreement between appellee and Bartlett's agent that if appellee's creditors attempted to push their claims he should be notified immediately so that the Bartlett mortgage might be placed on record, and that the mortgage was given only upon that express understanding between the parties, and also that during all this time appellee was insolvent, we are of opinion these facts and circumstances tended to show actual fraud, and the question as to whether this evidence did or did not show fraud in fact should have been submitted to the jury.

The judgment on the attachment is therefore reversed and the cause remanded.