## MURRY NELSON & CO.

*v.*

## JOSEPH LEITER.

*Opinion filed June 19, 1901.*

1. FRAUD—*ways in which conveyance may be in fraud of creditors.* A conveyance may be deemed fraudulent as against creditors upon two grounds: First, where it is entered into with actual fraudulent intent; and second, where, from the nature of the transaction, the conveyance must be held fraudulent as a conclusive presumption of law, without regard to intent or motives of the debtor.

2. SAME—*previous fraudulent conveyance, to be ground for attachment, must be with fraudulent intent.* The provision of the Attachment act (Rev. Stat. 1874, p. 152,) authorizing the writ to issue where the debtor has, within two years prior to the filing of the affidavit required, fraudulently conveyed or assigned his effects, so as to hinder creditors, applies only where the conveyance was with actual fraudulent intent to hinder and delay creditors, and not where the conveyance was fraudulent in law regardless of intent.

3. SAME—*whether a conveyance was with actual fraudulent intent to hinder creditors is a question of fact.* Whether a previous conveyance of property was with actual fraudulent intent to hinder and delay creditors, under the Attachment act, is a question of fact.

4. SAME—*right of debtor in failing circumstances to prefer a creditor.* A debtor in failing circumstances may pay or secure one or more creditors to the exclusion of others, provided such payment is made or security given with the intent in good faith to discharge or secure *bona fide* indebtedness.

5. SAME—*effect of debtor's knowledge that his bona fide preference will hinder other creditors.* The fact that a debtor, acting in good faith, knows or intends that his *bona fide* preference of one creditor will operate, to the extent of such preference, to hinder and delay creditors, does not render the transaction actually fraudulent, so as to be ground for attachment under the statute.

6. SAME—*fact that preference to bank exceeds amount it may legally loan does not render it invalid.* Section 10 of the act relating to banks, (Laws of 1887, p. 92,) providing that the liability for money loaned shall not exceed one-tenth part of the amount of capital actually paid in, is for the protection of depositors and stockholders, and the fact that the amount of a preference in its favor by a failing debtor exceeds one-tenth part of its paid up capital does not render the indebtedness, or the excess thereof over such one-tenth part, void and uncollectible as against creditors of the debtor.

*Nelson & Co.* v. *Leiter,* 93 Ill. App. 176, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. S. C. STOUGH, Judge, presiding.

BENTLEY & BURLING, (FRANK P. BLAIR, and MURRY NELSON, Jr., of counsel,) for appellant:

Actual fraud, within the meaning of the Attachment act, involves nothing more than the intent to hinder or delay creditors. The Attachment act, however, does not require the plaintiff to establish the fraudulent intent of the vendee. It deals with the debtor alone. If his fraudulent intent appears the attachment is sustained. This intent must appear in some way as a fact in the case. In other words, the hindrance or delay of creditors must be shown to form the whole or a part of the debtor's intent in doing the act complained of. *Ryhiner* v. *Ruegger*, 19 Ill. App. 156.

If the intention of the debtor in executing the deed be to hinder and delay creditors it will vitiate the whole deed, though it be made upon a good consideration or for the equitable purpose of securing an equal distribution of the effects among all the creditors. *Gardner* v. *Bank*, 95 Ill. 298.

Hindering and delaying creditors in the collection of their debts is defrauding them, within the meaning of the fourth section of our present Statute of Frauds. *Weber* v. *Mick*, 131 Ill. 520.

If the object in making a mortgage was to hinder or delay creditors, the instrument was not purged because the grantor may have had some other purpose in view. *Merry* v. *Bostwick*, 13 Ill. 210; *Reed* v. *Noxon*, 48 id. 323.

W. W. GURLEY, for appellee:

Under our statute an attachment will not issue where the fraud charged is a legal or constructive fraud, only, as contradistinguished from express or intentional fraud,

usually denominated fraud in fact. *Weare Commission Co.* v. *Druley,* 156 Ill. 25.

The writ of attachment may not issue for mere constructive fraud as contradistinguished from fraud in fact. In other words, though the transaction be such that a court of equity might regard it as constructively fraudulent, and therefore subject to be set aside at the instance of creditors, yet unless there was a fraudulent purpose or design actuating the defendant the case is not within the statute.    *Wadsworth* v. *Laurie,* 164 Ill. 42.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant company sued out of the superior court of Cook county a writ of attachment against the appellee, but on a hearing before a jury of the issue made under a plea traversing the grounds relied upon to authorize the issuance of the writ the appellant company was defeated.    Upon appeal to the Appellate Court for the First District the judgment of the superior court was affirmed.    This is a further appeal to this court.

The affidavit which the appellant company filed to entitle it to the writ of attachment, as ground for the issuing of the writ, stated that said appellee "has, within two years last past, fraudulently conveyed or assigned his property so as to hinder and delay his creditors." A conveyance of property may be deemed fraudulent as against creditors upon two distinct grounds: First, where the conveyance is entered into with the fraudulent intent to hinder and delay creditors; second, where, from the terms of the agreement for the conveyance or the nature of the transaction, the conveyance is declared fraudulent as a conclusive presumption of law, without regard to the real motives or purposes of the debtor.    In the first class of cases the fraudulent intent is always a question of fact to be established by extrinsic proof.    In the latter the conveyance is denounced as fraudulent as a legal inference, though the parties may not have been moved by

any real design to hinder, delay or defraud the creditor. This is substantially the language of this court in *Lawson* v. *Funk*, 108 Ill. 502.

The provision of the Attachment act here in question authorizes the issuance of a writ of attachment against a debtor who has been guilty, within two years prior to the filing of the affidavit, of having conveyed his property with the actual fraudulent intent and design of hindering and delaying his creditors. It is not sufficient that he has transferred his property under such conditions or circumstances as that, under the rules of law, the conveyance is deemed conclusively fraudulent as an inference of law, though made without any evil intent. To authorize the seizure of his property by attachment in advance of an adjudication that he is indebted to the plaintiff in the attachment suit, it is necessary it should be proven that within two years prior to the filing of the affidavit he had been guilty of conveying his property with the actual intent and purpose to fraudulently hinder or delay his creditors in the collection of demands against him. If a debtor has intentionally committed such a wrong against his creditors the law authorizes the seizure of his property by writ of attachment in advance of the rendition of a judgment against him, for the reason it is considered his conduct justifies the apprehension that he will repeat his fraudulent practices to defeat the efforts of his creditors to enforce payment of his debts if allowed to retain control and possession of his property until the claim of the creditors can be judicially investigated, reduced to judgment and an execution procured wherewith to levy on his property. That the debtor has done or omitted some act, however innocent or inadvertent, from which an inference of fraud, in legal effect, arises, does not justify such apprehension nor authorize the creditor to invoke the process of attachment. To justify the issuance of an attachment writ on the ground alleged in the affidavit in the case at

bar it must appear that within the period of two years the debtor has purposely and designedly disposed of his property with the fraudulent intent to hinder and delay creditors from seizing it in order to secure payment of judgments or claims against him. *Weare Commission Co.* v. *Druley,* 156 Ill. 25; *Wadsworth* v. *Laurie,* 164 id. 42.

Whether the appellant company should have prevailed on the issue under the plea traversing the grounds of attachment was a question of fact, as to which we are concluded by the action of the trial and Appellate Courts, unless error intervened in the ruling of the court during the trial relative to some question of law.

Without conceding the contention of the appellant company that the record presents for our decision the question whether, as matter of law, the evidence presented any defense on the issue in attachment, we may remark that the investigation of the testimony, which we were called upon to make in order to determine as to the correctness of various rulings of the court otherwise brought in review, has demonstrated that it cannot be declared, as matter of law, that the appellee was in fact guilty of actual fraud, as alleged in the affidavit. That was a question of fact, and under the testimony was properly submitted to the jury.

We cannot consider the contention of the appellant company that in stating the reasons which impelled the trial court to withdraw from the jury a letter which had previously been admitted in evidence over the objection of the appellant company, and in the remarks of the court in overruling the motion of the appellant to direct a verdict in its favor, the court expressed an opinion as to the weight and value of the evidence, and thereby prejudiced the cause of the appellant in the minds of the jury, for the reason no objection was preferred at the time to the action of the court so now complained of, no exception preserved thereto, and no attempt was afterwards made to obviate the effect of such remarks (if they

were improper) by an instruction to the jury or in any other manner. An objection of this character cannot be first mooted in a court of review. *Hall* v. *First Nat. Bank*, 133 Ill. 234.

A brief reference to the facts is required in order to dispose of objections preferred by the appellant company to the rulings of the court in modifying and refusing instructions asked by the appellant company and in giving the instructions asked by the appellee.

For some time prior to the month of June, 1898, the appellee, Joseph Leiter, had been purchasing enormous quantities of wheat in the markets of Chicago and other cities, and contracting for other large quantities to be delivered in the future, on the boards of trade in Chicago and other cities, with the view of holding the grain, or contracts therefor, in expectation of profiting by an increase in the price of the commodity. On or about the 12th day of June, 1898, it became evident the adventure would not result in a profit but that great losses must inevitably follow. Money in large sums, entirely beyond the power of the appellee to supply within himself, was demanded as margins to protect his contracts for the purchase of the wheat for future delivery. His father, L. Z. Leiter, had already supplied him with large amounts of money, which he had invested in the enterprise, and his father had also become liable as his endorser and guarantor in still larger amounts. On said 12th day of June said L. Z. Leiter consulted with Mr. John P. Wilson, a member of the bar of the city of Chicago, as to the advisability of advancing still further amounts for the purpose of protecting the contracts of his son, the appellee, but nothing was said or done at that time with reference to the transfer of the property of the appellee. On the morning of the 13th of June, 1898, the appellee was advised by his representatives on the board of trade in the city of Chicago that the price of wheat had again declined in that market, and that his contracts for pur-

chases of the grain would be closed unless protected by further advances of money. The father of appellee then positively declined to again assist him, and it was manifest a disastrous financial loss could not be averted. Soon after, and during the forenoon of the same day, the appellee and his father, L. Z. Leiter, went to the office of the said John P. Wilson for the purpose of consulting with him as to the best course to be pursued for the protection of the property interests involved in the impending crash. As the result, in part, of the consultation, the appellee executed and delivered to said John P. Wilson a quit-claim deed conveying to Wilson two certain pieces of business property in the city of Chicago. Each of the properties so conveyed was subject to mortgages to secure large indebtedness of the appellee, his equity in both being of the aggregate value of about $200,000. The consideration was expressed in the deed to be one dollar and other valuable consideration, but the real consideration was the agreement of said Wilson to receive the title as trustee, to secure an indebtedness which the appellee advised Mr. Wilson existed against him in favor of the Illinois Trust and Savings Bank. The father of appellee was obligated to the bank on such liabilities, or a part thereof, as guarantor or endorser for the son. Mr. Wilson at once prepared a declaration of trust and delivered it to the bank, together with a copy of the deed from the appellee on which the trust was founded.

The contention of the appellant company is, the conveyance to Mr. Wilson was entered into by the appellee with the actual intent to thereby hinder and delay his other creditors. Counsel for appellant do not seem to question the doctrine, well established in this court, that a creditor, though in failing circumstances, may, if he acts in good faith, lawfully prefer one of his creditors, and pay, or secure the payment of, the indebtedness to such favored creditor though such preference may hinder and delay, or even defeat, other creditors in the collec-

tion of claims and demands due to them. But counsel, as we understand their contention, insist that the evidence in the case at bar disclosed that it was not the sole purpose and intent of the appellee, in the execution of the deed to Mr. Wilson, to secure the indebtedness to the said trust and savings bank or to thus protect his father as endorser or guarantor for such indebtedness, but that it appeared from the proof, as a matter of fact, the appellee was moved and controlled in the transfer of the property to Mr. Wilson by the intent and purpose to place the property beyond the reach of other of his creditors whom he believed would seize the same by writs of attachment or other process against him in order to collect their claims, and that the conveyance was in fact, in part at least, with the intent to hinder and delay creditors.

Counsel for appellant insist that it appeared, without dispute or conflict in the testimony, that one purpose which moved the appellee to execute the conveyance was the intent to hinder and delay the creditors in the collection of their demands against him, and that the law, upon such undisputed state of case, would declare the conveyance constituted actual fraud, and that it was therefore error in the court to instruct the jury, as was done in instructions Nos. 1 and 2, given for the appellee, to the effect that they should find for the appellee if they believed, from the evidence, the appellant company had failed to prove that the appellee made the conveyance with the purpose and intent of hindering and delaying his creditors; and upon the same contention appellant company urges it was error to refuse instruction No. 4 asked in its behalf. Instruction No. 4 was as follows:

"It is not necessary, to entitle the plaintiff to recover on the attachment issue, that the defendant should have had no other motive than to hinder or delay a creditor. If he had such motive, even though he also intended to secure the payment of an alleged debt due from him to

the Illinois Trust and Savings Bank, your verdict should still be for the plaintiff."

A debtor in failing circumstances, not seeking the benefit of the general Assignment act, may decide to prefer and pay one creditor to the exclusion of all others, or may, by mortgage or deed of trust, or in other legal manner, secure the payment of his indebtedness to one creditor though he thereby hinders and delays his other unpreferred creditors in the collection of their claims, provided the payment is made or security given with the intent, in good faith, to discharge or secure the preferred claim. (*Waddams* v. *Humphrey*, 22 Ill. 661; *Funk* v. *Staats*, 24 id. 633; *Morris* v. *Tillson*, 81 id. 607; *Welsch* v. *Werschem*, 92 id. 115; *Wood* v. *Clark*, 121 id. 359; *Hulse* v. *Mershon*, 125 id. 52.) A debtor who is indebted to a number of creditors, when he exercises the right to prefer one of his creditors and to secure the payment of his indebtedness to such creditor by a mortgage or deed to a trustee creating a prior lien on his real estate, must, of course, not only be conscious that his act of preference will hinder and delay,—possibly defeat,—the collection of other demands against him, but if he intends his mortgage or trust deed shall be effective, his purpose being to subordinate the claims of the other creditors to that of the creditor he desires to prefer, it may always be said his intention is to hinder and delay all the unpreferred creditors. The test to be applied is whether the debtor, in exercising the privilege of making the preference, acts in good faith, with the intent to pay, or secure the payment of, a just indebtedness against him, and he cannot be deprived of the right on the ground he knows or intends that the preference given to one creditor, to the extent such preference shall be available and effective, will operate to hinder and delay other creditors. There was, therefore, no error in granting the instructions asked by the appellee or in refusing said instruction No. 4 asked by the appellant company.

It was not error to refuse to give instruction No. 1 asked by the appellant. It was largely argumentative, directed action by the jury on a partial statement, only, of the facts proper to be considered before taking such action, and was also subject to the objection that it might be inferred from the language employed that it was not sufficient to relieve the transaction in question from the taint of fraud that the conveyance was executed in good faith, to secure a *bona fide* indebtedness.

We do not assent to the view urged by the appellant company, that, as it appeared the indebtedness of the appellee to the Illinois Trust and Savings Bank exceeded in amount one-tenth of the capital of the bank actually paid in, under the operation of the provisions of section 10 of an act concerning corporations, etc., approved June 16, 1887, (Starr & Cur. Stat. 1896, chap. 16*a*, par. 13,) such indebtedness or such excess thereof became "void and uncollectible." Section 10 is as follows: "The total liabilities to any association, of any person, or of any company or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of capital of such association actually paid in. But the discount of bills of exchange drawn in good faith, against actually existing values, and the discount of commercial or business paper actually owned by the person negotiating the same, shall not be considered as money borrowed."

The legislative intent in the enactment of this statute was to prescribe the duties of those officials who stood charged with the management and control of the funds of banks, and who were authorized to pass on applications of persons desiring to borrow from the funds of the bank. The mandate of the statute is, such officials shall not permit any one person, firm or company to borrow from the funds of the bank, either in one loan or in the aggregate of different loans, a sum exceeding one-tenth

part of the amount of the paid-up capital of the bank. The purpose of the enactment is to protect the interests of depositors and stockholders. There is no express declaration in the section that loans in excess of the statutory limitation shall not be collectible, and to so construe the section would be to defeat the very purpose which prompted the adoption of the section. The provisions of the 29th section of the National Banking act (Rev. Stat. of U. S. 1878, p. 1005,) are in no substantial respect dissimilar from those of the section of our statute here under consideration. The Supreme Court of the United States had occasion, in *Gold Mining Co.* v. *National Bank*, 96 U. S. 640, to construe the section of the National Banking act referred to, and said: "A defendant sued by a national bank for moneys it loaned him cannot set up as a bar that they exceeded in amount one-tenth part of its capital stock actually paid in." 16 Am. & Eng. Ency. of Law, (1st ed.) 166.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*