## Edward R. Bacon, Appellant, v. Otto E. Reichelt, Appellee.

### Gen. No. 20,865.

1. ASSUMPSIT, § 89*—*when evidence insufficient to support verdict.* In an action of assumpsit, evidence examined and *held* insufficient to support the verdict.

2. ATTACHMENT—*when instruction as to conveyance of property properly given.* Where plaintiff's affidavit for attachment in aid in an action of assumpsit for money alleged to have been embezzled, alleges that defendant had within two years last past fraudulently disposed of his property so as to hinder and delay creditors, it is not error to instruct that if the jury find from the evidence that a certain conveyance was made for the sole purpose of securing the grantee upon his obligation as a bondsman for defendant, such con-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

veyance cannot be considered by them as evidence in support of plaintiff's case upon the attachment issue, even though they may believe from the evidence that such property was purchased with money stolen from plaintiff.

3. APPEAL AND ERROR, § 1672*—*when omission in plea waived.* Failure of plaintiff to call the trial court's attention to an omission in the plea rendering it obnoxious to a general demurrer constitutes a waiver of such omission.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed April 28, 1916.

**Statement by the Court.** This is an action in assumpsit brought in the Circuit Court of Cook county by Edward R. Bacon, appellant, against Otto E. Reichelt, appellee, in connection with which suit was issued a writ of attachment in aid, levied upon certain property of defendant (appellee). There was a trial by jury which resulted in a verdict and judgment for plaintiff for $640 on the assumpsit issue, but against him on the attachment issue, and the writ of attachment was dismissed.

Plaintiff was engaged in the grain commission business in Chicago. Defendant, who had been continuously in the employ of plaintiff for about twenty-five years, and who during that period had advanced in salary and position from bookkeeper to manager of plaintiff's office, terminated such employment April 16, 1912, by a letter received by plaintiff on said date, upon his return to Chicago from eastern cities, wherein defendant confessed to embezzling $640 of plaintiff's money during the latter's absence.

Plaintiff's evidence tends to show that defendant during 1910, 1911 and 1912, respectively, while in plaintiff's employ through a series of forgeries and embezzlements, most of which occurred at times when plaintiff was absent from Chicago, misappropriated

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

and applied to his own use $24,329.60 from plaintiff. The taking of such sum was admitted by defendant upon the trial, who claimed, however, that such amount represented unpaid salary owing him by plaintiff; that during 1902 or 1903 defendant declined a proffered partnership in plaintiff's business, because the latter's financial condition was unsatisfactory; that, thereupon, plaintiff increased defendant's salary from $1,800 to $5,000 a year; that for a period of eight or nine years following, defendant had only drawn on account of such salary, about $2,000 each year. Defendant further testified that at the time his salary was fixed at $5,000 a year, Lamson Brothers were giving financial aid to plaintiff; that defendant during such period prepared and presented to plaintiff a statement showing the true condition of the latter's business, which statement was changed by plaintiff so that it purported to show that he owed Lamson Brothers $75,000 instead of $145,000. At that time, plaintiff in referring to Lamson Brothers, told defendant that the latter "would have to cover up the difference"; that plaintiff otherwise increased the purported assets and decreased the purported liabilities thereon shown, and instructed defendant to thereafter prepare such statements accordingly; that plaintiff further instructed defendant to make entries in plaintiff's books in such manner as would indicate that the cost of running plaintiff's business was much less than the actual cost thereof, and show that defendant's salary was only $2,400 a year, and that the money paid defendant in excess of such sums should be run through the grain account; to place locks upon plaintiff's books of entry to prevent discovery of such deception, and that thereafter such books were locked by defendant, who admitted, however, that, except as to his salary, plaintiff's books were kept correctly by him. An examination of plaintiff's books during May or June, 1912, after defendant's employment ceased, did not disclose any false entry

therein pertaining to the cost of running plaintiff's business, other than the alleged false entries as to defendant's salary. All of the entries in plaintiff's books were made by defendant, and all checks were supposed to be signed by plaintiff, whose account with the Bank of Montreal varied from $1,000 to $200,000 a day, and had exceeded $300,000 in a single day. Defendant had no authority at any time to sign checks for plaintiff.

The method used by defendant in obtaining money in excess of $2,400 a year, his purported salary as shown by plaintiff's books, may be illustrated by the following instance: According to an entry made by defendant upon plaintiff's books, a check was purported to have been issued in the course of plaintiff's business to W. A. Fraser & Company, for $3,104.10. The check actually drawn to the order of that firm was for $3.50. Of the amount appearing upon the books to have been paid to W. A. Fraser & Company, $2,864.16 was used by Reichelt to buy bonds for his own use and benefit. By similar methods defendant obtained from plaintiff $13,809 during 1911, and $7,420 from January 2nd, to April 13th, inclusive, 1912. Defendant claims that all checks thus issued were signed by plaintiff, sometimes in blank; "that the stub-book was in his (plaintiff's) hands all day long;" that plaintiff had access to all of the books and that the moneys thus obtained by defendant were so obtained with plaintiff's knowledge, authority and consent, and intended to apply on defendant's additional salary. Such knowledge, authority or intent was denied by plaintiff.

Defendant further testified that he kept no record of moneys in excess of $200 per month thus obtained by him, but that record of same was kept by plaintiff. The checks upon which defendant obtained such moneys were the only checks of plaintiff's that were missing at the time of the trial. Checks issued next preceding and immediately following the checks above referred

to were found intact by the auditor who made the examination of plaintiff's books, shortly after defendant's employment ceased. During the period of 1910, 1911 and 1912, defendant purchased with the moneys thus acquired, bonds, diamonds, an automobile and a residence in Maywood which he occupied as his home, and maintained a son in Harvard University at a cost of $1,000 a year. During these years plaintiff frequently visited defendant's home and had knowledge, generally, of defendant's style and manner of living. Plaintiff testified, however, that he had been told by defendant, which the latter denies, that during such period defendant had been given money by a wealthy relative.

Plaintiff contends that the verdict is against the manifest weight of the evidence; that the court erred in instructing the jury on the attachment issue, that the judgment should be reversed and the cause remanded for a new trial of both issues.

MOSES, ROSENTHAL & KENNEDY, for appellant; WALTER BACHRACH and SIGMUND W. DAVID, of counsel.

SIMON LA GROU, for appellee; EMORY D. FRAZIER, of counsel.

MR. JUSTICE McGOORTY delivered the opinion of the court.

We are of the opinion that the verdict in this case is against the manifest weight of the evidence. Following defendant's confession to plaintiff that he wrongfully took $640 of plaintiff's money, defendant was convicted in the Criminal Court of Cook county of embezzling money from plaintiff, and sentenced to the penitentiary. Defendant's testimony that plaintiff increased defendant's salary from $1,800 to $5,000 a year is unsupported by any other direct evidence. Although

defendant testified that owing to plaintiff's poor financial condition he waited for several years before demanding or receiving such additional compensation, the evidence does not show such improvement in plaintiff's financial condition as would even tend to explain why defendant was enabled to rightfully obtain from plaintiff $24,329.60 within a period of less than two years, commencing May 5, 1910.

It seems highly improbable that plaintiff, whose daily banking transactions varied from $1,000 to $200,000 a day, would falsify his books for the sole purpose of concealing from his creditors an added expense of $3,000 a year. There is no evidence in this record that Lamson Brothers were ever deceived by any entry made in plaintiff's books, or denied access to same. It has not been shown by any evidence how plaintiff's alleged representation to Lamson Brothers, that plaintiff owed the latter $70,000 less than the amount actually owing, deceived or could have deceived said firm. So far as the evidence discloses, it may be reasonably inferred that only plaintiff was deceived by defendant's false entries in plaintiff's books. Considering the further fact that defendant had been duly adjudged guilty of embezzling plaintiff's money, that most of the money taken by him was during plaintiff's absence in some distant city, that the checks upon which defendant obtained such moneys are the only checks which are missing, it is evident that the verdict is against the manifest weight of the evidence.

It is also contended that the court erred in instructing the jury as follows:

"The court instructs the jury that if they find from the evidence herein that the conveyance or conveyances to John W. Barker in question were made for the sole purpose of securing said Barker upon his obligation as a bondsman for said defendant Reichelt, then the court instructs the jury that such conveyance or conveyances cannot be considered by them as evidence in support

of the plaintiff's case upon the attachment issue herein, even though you may believe from the evidence in the case that the property so conveyed was purchased with moneys stolen from Bacon by the defendant.''

Plaintiff's affidavit for attachment alleged, *inter alia*, that defendant had ''within two years last past fraudulently * * * disposed of his property, so as to hinder and delay his creditors.'' In our opinion, the court did not err in giving such instruction. In *Murry Nelson & Co. v. Leiter*, 93 Ill. App. 176, 180, the court said: ''Our Supreme Court has construed the attachment act as applying only in cases where the debtor has committed a fraud in fact, in doing the act found fault with, as contradistinguished from a legal or constructive fraud. They have, in decided cases, held that it is 'not enough that the effect of the deed was to delay creditors, but it must have been executed with that purpose and intent,' and that 'granting writs of attachment in cases where only legal or constructive fraud is shown is outside of the general scheme and purpose of the attachment law.' *Weare Commission Co. v. Druley*, 156 Ill. 25.'' Even if such instruction were held to be erroneous, the giving of same could not have constituted prejudicial error, as it was the duty of the jury, under the evidence, to find the attachment issues in favor of the defendant.

The plea or traverse of defendant to plaintiff's affidavit of attachment filed June 19, 1912, denied that within two years last past defendant fraudulently concealed or disposed of his property, etc. It is obvious that the period from May 14, 1912, the date upon which plaintiff's affidavit of attachment was filed, to June 19, 1912, is not covered by defendant's plea. While such plea would have been obnoxious to a general demurrer, the failure of plaintiff's counsel to call the attention of the trial court specifically to this question constituted a waiver of the omission complained of by plaintiff, in defendant's plea. *Devine v. Chicago City Ry.*

*Co.,* 237 Ill. 278, 280; *First Nat. Bank of El Paso v. Miller,* 235 Ill. 135, 139.

For the reasons herein stated, the judgment of the Circuit Court is reversed and the cause remanded for a new trial on the assumpsit issues only.

*Judgment reversed and cause remanded.*